Filing # 244503268 E-Filed 03/24/2026 04:05:33 PM

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, FLORIDA

THE HUNTINGTON NATIONAL BANK, as lender, and THE HUNTINGTON NATIONAL BANK, as Administrative Agent and Collateral Agent,

Plaintiffs,

CASE NO.: 11-2026-CA-000170-00001-01

v.

R&R EXPRESS PROPERTIES, LLC, RICHARD S. FRANCIS, KATHLEEN L. FRANCIS, and CENTENNIAL BANK,

Defendants.
________________________________/

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PERMIT RECORDING OF LIS PENDENS**

Plaintiffs, Huntington National Bank, as Lender, and Huntington National Bank, as Administrative Agent and Collateral Agent (collectively, "Plaintiffs"), submit this Memorandum in support of their Motion to Permit Recording of Lis Pendens (Doc. 9).

## I. Background

On March 18, 2022, Huntington Bank and another lender, S&T Bank ("S&T"), (together the "Lenders") agreed to provide Defendant R&R and other affiliated borrowers (the Borrowers") with several loans pursuant to a Credit Agreement. The Credit Agreement loans include a revolving loan commitment of up to $85 million

("Revolving Loans"). The Bank and S&T also provided R&R and the other affiliated Borrowers with a term loan in the amount of $3,675,000 ("Term Loan" together with the Revolving Loans, the "Operating Loans").

Pursuant to the Credit Agreement, R&R and the other affiliated Borrowers granted Plaintiff, in its capacity as collateral agent for the Lenders, a lien and security interest in substantially all of their assets as collateral for the Operating Loans. *See* Article 4, Section 4.1 (Security Interest in the Collateral) ("To secure the prompt payment and performance of the Obligations, each Loan Party hereby grants to Agent, for the benefit of the Agent, each Lender, and the benefit of each of their respective Affiliates, a continuing security interest in and a pledge of all of its Collateral.").

In addition to the Operating Loans, Huntington Bank issued a mortgage loan (the "Florida Loan") (and together with the Operating Loans the "Loans") to R&R, which was collateralized by a "corporate retreat" residence located at 550 S. Barfield Drive, Marco Island, Florida 34145 (the "Marco Island Property"). The Marco Island Property had been previously appraised at $10.4 million. ¶

R&R and its affiliates are in the logistics industry. During the COVID period, the trucking industry rapidly expanded by adding trucks and drivers. However, as supply chains later stabilized, the entire industry found itself with excess capacity. This excess supply led to a massive drop in prices and a "freight recession," which

has persisted from 2022 to the present. R&R and the additional Borrowers' financial condition steadily declined during the freight recession.

Throughout 2025, this decline accelerated rapidly. During 2025, R&R and the other affiliated Borrowers reported significant monthly operating losses which indicated that R&R and the other Borrowers were burning through cash at an alarming rate. The collective net operating losses of R&R and the other Borrowers in 2025 eventually totaled a staggering $25.9 million. Plaintiffs suspect that the burn rate was even higher than reported by R&R and the other Borrowers.

Prior to December 10, 2025, an advisor retained by the Borrowers produced a preliminary restructuring plan which required additional capital of at least $25 million. The proposed source of that capital was the existing lenders (i.e., Plaintiffs). The Plaintiffs engaged a financial advisor to review and analyze the Borrowers' Advisor's preliminary restructuring plan. After reviewing Borrowers' Advisor's analysis with the assistance of their own financial advisor, Plaintiffs did not find the preliminary restructuring plan to be viable.

The deterioration of the Borrowers' financial condition accelerated in late 2025. The Borrowers lacked sufficient liquidity to meet their ongoing obligations and had accrued approximately $65 million in trade payables. By mid-December 2025, Plaintiffs had recommended that the Borrowers' wind down their affairs in an orderly manner. Despite the requests of the Plaintiffs, the Borrowers, including

R&R, refused to do so and continued to operate and incur debts that they could not pay.

In the midst of this financial crisis, and while negotiations among Plaintiffs, R&R and the other Borrowers were ongoing, on December 29, 2025, R. Francis (the principal of R&R and the other Borrowers) executed a fraudulent scheme designed to transfer the equity in the Marco Island Property away from R&R to R. Francis and his wife. The first step in this scheme was for R. Francis to cause R&R to transfer title to the Marco Island Property from R&R to R. Francis and his wife, K. Francis (the “Transfer”). R&R conveyed the Marco Island Property without the Plaintiffs’ consent and the Transfer constitutes a default under the Florida Loan documents.

On the same day as the Transfer, R. Francis and his wife granted Centennial Bank a mortgage on the Property. The Closing Disclosure reveals that the Centennial loan amount was approximately $5.3 million. At the time of the Transfer, R&R was insolvent, and it is jointly and severally liable under the Operating Loans that are in default. The balance of the Operating Loans (excluding fees and costs) as of January 5, 2026, totaled $40,878,970.60.

On January 5, 2026, Plaintiffs received a wire in the amount of $5,279.776.20 from a previously unknown source (the Law Office of Ronald Webster) (the “Wire”) purportedly as payment on the Florida loan. Prior to receiving the payment, Plaintiffs were not aware of the transfer of the Marco Island Property. After Plaintiffs filed this

lawsuit, Centennial contacted Plaintiffs and demanded the return of the funds to satisfy the mortgage held by Huntington Bank. In response to the demand, Huntington returned the funds.

**In short, R&R Express transferred the Marco Island Property worth over $10,000,000 to an insider (R. Francis) and received in return only the satisfaction of an outstanding mortgage of roughly $5,300,000. In other words, R&R Express received $0 in exchange for the equity in the Marco Island Property at a time when R&R Express owes Plaintiffs at least $40,000,000.**

## II. Applicable Legal Standard

Section 48.23, Florida Statutes, governs notices of *lis pendens* and the prerequisites for filing them. Fla. Stat. § 48.23(3) provides that when, as here, the underlying lawsuit is not founded on a "duly recorded instrument," "the court shall control and discharge the recorded notice of *lis pendens* as the court would grant and dissolve injunctions." *See* Fla. Stat. § 48.23(3). Florida courts have prescribed the procedures to be followed by trial courts in controlling a *lis pendens* in cases that are not founded on a recorded instrument. *LB Judgment Holdings, LLC v. Boschetti*, 271 So. 3d 115, 118-19 (Fla. 3d DCA 2019). As such, the Court must balance: (a) the lis pendens proponent's need to place non-parties on notice of the proponent's claims affecting the owner's real property; and (b) the damages that may be suffered by the owner should the proponent's claims fail to prevail. *Id.* at 119. The Court's balancing

test is accomplished through two considerations: (1) is there a "fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit; and (2) if there is such a nexus, what is the appropriate amount of a *lis pendens* bond to be required of the proponent, bearing "a reasonable relationship to the amount of damages which the property-holder defendant demonstrates will likely result if it is later determined that the notice of *lis pendens* was unjustified." *Id.*

Critically, the evaluation of the "fair nexus" factor is not a trial or mini-trial on the merits of all elements of the *lis pendens* proponent's claims. *Id.* Instead, "[t]he relevant question is whether alienation of the property or the imposition of intervening liens…conceivably could disserve the purposes for which lis pendens exists. Where the answer is yes, fair nexus must be found." *Id.* (quoting *Chiusolo v. Kennedy*, 614 So. 2d 491, 492 (Fla. 1993). This is because it is impracticable to require a proponent of a *lis pendens* to fully prove each element of its claim in an evidentiary hearing where the case has not been noticed for trial and the parties may not even have completed discovery. *Id.* (citing *Regents Park Investments, LLC v. Bankers Lending Services, Inc.*, 197 So. 3d 617, 621 (Fla. 3d DCA 2016); *see also Nu-Vision, LLC v. Corporate Convenience, Inc.*, 965 So.2d 232, 236 (Fla. 5th DCA 2007) (finding that the *lis pendens* proponent must make a "minimal showing that there is at least some basis for the underlying claim[] [a]nd…show that he or she has

a good faith basis to allege facts supporting a claim, and that the facts alleged would at least state a viable claim.").

Finally, when a suit involving real property is, as in the present case, not based on a duly recorded instrument but there is a fair nexus proven, the control and discharge of the *lis pendens* is at the discretion of the trial judge. *See Ortiz v. Weiss*, 227 So. 3d 689, 691 (Fla. 3d DCA 2017). Applying this standard, the Court should grant Plaintiffs' Motion and permit them to file and record a Lis Pendens on the Marco Island Property.

## III. A Fair Nexus Exists Between the Apparent Legal or Equitable Ownership of the Property and the Dispute Embodied in the Lawsuit.

Here, Plaintiffs can demonstrate a fair nexus between the alleged fraudulent transfer and the real property encumbered by the proposed *lis pendens*. Plaintiffs have recently filed their Verified Complaint to avoid the transfer of the Marco Island Property from R&R Express to R. Francis (who is the principal of R&R Express) and his spouse K. Francis (collectively, the "Francises"). As set forth in the Verified Complaint, said transfer should be voided because it was made with the actual intent to defraud the Plaintiffs and because it was made for grossly inadequate consideration while R&R Express was insolvent.

Specifically, as alleged in the Verified Complaint, in the midst of their financial crisis, and while negotiations among Plaintiffs and R&R Express were

ongoing, on December 29, 2025, the Francises executed a fraudulent scheme designed to transfer the equity in the Property away from R&R Express to the Francises. Upon information and belief, the Francises rushed to complete the Transfer before year end in an effort to claim a homestead exemption in the Property in an attempt to further shield the Property from creditors. Not only was R&R Express insolvent at the time the Transfer was made, but the Transfer was made in violation of R&R Express's loan covenants, and at a time when R&R Express was significantly indebted to the Plaintiffs and did not have the ability to repay the Loans. At bottom, the Transfer was made in an attempt to shield the equity in the Marco Island Property from the claims of the Plaintiffs.

Although Plaintiffs need not conduct a trial on the merits of their claims at this juncture, Plaintiffs already have sufficient evidence demonstrating a good faith basis to allege facts supporting their claim, and further, the facts alleged state a viable claim. The Marco Island Property is valued at over 10 million dollars. However, the deed from R&R Express to the Francises and the Collier County Property Appraiser's records demonstrate that the Francises paid ***no consideration*** for the Property, other than perhaps their taking on the obligation to make payments on a new mortgage. Because there is a fair nexus between the fraudulent Transfer and the Property to be encumbered by the *lis pendens* should this Court permit the recording of same, this Court should grant Plaintiffs' Motion.

## IV. The Balancing Test Weighs in Plaintiffs' Favor.

Plaintiffs' need to place non-parties on notice of their claims affecting the Francises' Marco Island Property strongly outweighs any damages that may be suffered by the Francises should Plaintiffs' claims fail to prevail. If a *lis pendens* is not recorded, the Francises will be able to transfer or further encumber the Marco Island Property to an unsuspecting third party. Further, another creditor can record a lien on the Property. On the other hand, there will be no harm to the Francises if a *lis pendens* is recorded. They can continue to live in and use the Marco Island Property and, upon information and belief, plan to assert that it is now their homestead[1]. The recording of the Lis Pendens will in no way affect their use and enjoyment of the Marco Island Property because it merely serves as constructive notice of the pending litigation – ***not*** an encumbrance or lien on the Marco Island Property. Further, in granting leave to file the *lis pendens* the court would be preserving its authority to enter judgment setting aside the transfer as contemplated by Fla. Stat. § 726.105(a) and (b). If the Court permits the Plaintiffs to file and record a *lis pendens*, the Court should not require a bond.

Accordingly, because Plaintiffs have satisfied their burden in demonstrating a fair nexus between the fraudulent transfer and the Marco Island Property to be

[1] Plaintiffs reserve the right to challenge any possible future claim of homestead.

encumbered, and because Plaintiffs' need to place non-parties on notice of their claims outweighs any potential harm to the Francises, this Court should grant Plaintiffs' Motion to Permit Recording of Lis Pendens until this action is fully resolved.

Dated: March 24, 2026

Respectfully submitted,

/s/ Richard G. Salazar

Richard G. Salazar
Florida Bar No. 899615
richard.salazar@bipc.com
John D. Emmanuel
Florida Bar No: 0475572
john.emmanuel@bipc.com
Alexandra M. Dragovich, Esq.
Florida Bar No. 1025374
alexandra.dragovich@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
401 East Jackson Street, Suite 2400
Tampa, FL 33602
Tel. No. 813 222 8180

Fax No: 813 222 8189
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 24, 2026, pursuant to Florida Rules of Judicial Administration, Rule 2.516, I electronically filed the foregoing Request for Production with the Clerk of Court by using the Florida Court E-Portal Filing System.

/s/ Richard G. Salazar

4927-4260-2136, v. 1