**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, FLORIDA**

THE HUNTINGTON NATIONAL BANK, as lender, and THE HUNTINGTON NATIONAL BANK, as Administrative Agent and Collateral Agent,

Plaintiffs,

v.

Case No.: 11-2026-CA-000170-00001-01

R&R EXPRESS PROPERTIES, LLC, RICHARD S. FRANCIS, KATHLEEN L. FRANCIS, and CENTENNIAL BANK,

Defendants.
_________________________________________/

**CENTENNIAL'S ANSWER AND
AFFIRMATIVE DEFENSES TO PRINCIPALS CROSSCLAIM**[1]

Plaintiff/Counter-Plaintiff, Centennial Bank ("Centennial"), by and through its undersigned counsel, hereby files this answer and affirmative defenses to the "Defendants Richard S. Francis & Kathleen L. Francis's Answer & Affirmative Defenses to Centennial Bank's Cross-Claim & Crossclaims Against Centennial Bank" (the "Principals Crossclaim"), filed by Richard S. Francis and Kathleen L. Francis (together, the "Principals"), on April 3, 2026, and alleges:

**A. ANSWER**

For its answer, pursuant to Florida Rule of Civil Procedure 1.110(c), Centennial responds as follows to the correspondingly numbered paragraphs of the Principals Crossclaim:

1. Centennial admits the allegations contained in paragraphs 72, 73, 74, 75, 76, 77, 173, and 175 of the Principals Crossclaim for jurisdictional purposes only.

[1] Any capitalized terms not defined herein shall be given the same meaning as in "Centennial Bank's Answer, Affirmative Defenses, Counterclaim And Crossclaim" filed on February 17, 2026.

2. Centennial admits the allegations of paragraphs 78, 79, 80, 81, 82, 83, 84, 85, 86, 88, 90, 91, 93, 94, 97, 98, 99, 102, 104, 115, 116, 120, 130, 143, 146, 172, and 181 of the Principals Crossclaim.

3. Centennial is without knowledge as to the allegations of paragraphs 87, 89, 92, and 95 of the Principals Crossclaim and demands specific proof thereof.

4. Centennial denies the allegations of paragraphs 117, 132, 133, 134, 140, 141, 142, 145, 147, 148, 151, 156, 157, 158, 159, 160, 161, 162, 163, 164, 166, 167, 168, 169, 170, 171, 176, 177, 178, 179, and 180 of the Principals Crossclaim.

5. As to paragraph 96 of the Principals Crossclaim, Centennial admits that an evidentiary hearing occurred on March 31, 2026, and objects to any effort on the part of the Principals to summarize, report, or spin the events or testimony transpiring at the same, and will rely instead upon the official transcript of proceedings.

6. As to paragraphs 100, 101, 118, and 119 of the Principals Crossclaim, Centennial admits to the existence and authenticity of the referenced correspondence, but otherwise denies the sum and substance of these paragraphs.

7. As to paragraph 103 of the Principals Crossclaim, Centennial admits to the authenticity of the exhibit, and denies for all other purposes.

8. As to paragraphs 105 and 106 of the Principals Crossclaim, Centennial admits that it filed a responsive pleading to the Huntington Complaint, but further notes that the events transpiring, the testimony to date, the documentation now in the hands of Centennial, and the record makes clear that declaratory relief is no longer necessary, which is why that count has been dropped.

9. As to paragraphs 107 and 108 of the Principals Crossclaim, Centennial admits to the authenticity of the exhibit, and denies for all other purposes.

10. As to paragraph 109 of the Principals Crossclaim, Centennial admits that as a technological glitch the auto-debit function for the Centennial Obligation was not removed when Huntington wired its remaining funds, because the Centennial Obligation still had not been fully repaid, and the draw was therefore applied to further reduce the debt.

11. As to paragraphs 110, 111, and 112 of the Principals Crossclaim, Centennial admits that counsel for Centennial and counsel for the Principals have been in ongoing discussions through Friday, April 3, 2026, regarding their collective efforts to calculate a payoff, and those discussions are in a body of e-mails and correspondence that are or will be imminently be a matter of record; however, Centennial denies that it has not provided a payoff or the indubitable equivalent to the Principals for the Centennial Obligation, which is increasing daily.

12. As to paragraphs 113 and 114 of the Principals Crossclaim, Centennial admits to the authenticity of the Centennial Release, that is characterized as a release rather than a satisfaction because at the time of recording, Huntington had satisfied its obligation to Centennial, but the Principals had not: To the extent that the Principals seek to mischaracterize the document, Centennial denies these paragraphs.

13. As to paragraphs 121 and 125 of the Principals Crossclaim, Centennial is unable to admit or deny the current balance in the Frozen Account because it is subject to adjustment on a daily basis to account for factors already well known to the Principals and their counsel. To be sure, the Principals are exhausting the balance in the Frozen Account with vexatious litigation tactics.

14. As to paragraph 122 of the Principals Crossclaim, Centennial admits that it has continued the hold on the Frozen Account because counsel for the Principals have repeatedly threatened monumental "lender liability litigation" against both Huntington and Centennial, as a result of both financial institutions' apparent discovery of the Principals' loan fraud. With this in

mind, Centennial has no alternative but to retain its collateral position in this account, as repeatedly discussed between counsel.

15. As to paragraphs 123 and 124 of the Principals Crossclaim, Centennial admits to the authenticity of e-mail traffic and related communications between counsel for Centennial and the Principals, but objects based upon the characterization and the partial nature of the communications exchanged and referenced therein.

16. As to paragraph 126 of the Principals Crossclaim, the release of mortgage and the explanatory letter of the same date remove any doubt as to why Centennial denies the sum and substance of this paragraph as rhetorically alleged.

17. As to paragraphs 127, 128, and 154 of the Principals Crossclaim, Centennial admits that it continues to assert a breach of contract action, Count IV of the Crossclaim against the Principals.

18. As to paragraph 131 of the Principals Crossclaim, Centennial denies that the correspondence in question effectuated a recission: Counsel for the Principals repeatedly promised and failed to produce a global result, such that recission became impossible, and Centennial was required to change its position in order to get back the majority of the funds that had been received by Huntington in furtherance of the Principals' fraud scheme. The letter is clear, as were the lawyers in their discussions.

19. As to paragraphs 135, 152, and 155 of the Principals Crossclaim, Centennial admits that the remedy of recission is an equitable remedy intended to return the parties to their former status by undoing a transaction; however, the Principals acted so as to make recission impossible, when this was originally proposed by Centennial, and they responded with threats of lender liability.

20. As to paragraphs 136, 137, 138, 139, and 153 of the Principals Crossclaim, Centennial has not released its administrative freeze, because this is the only remaining collateral for the Centennial Obligation, and Centennial disagrees with the mischaracterization of Centennial's position in these five (5) inconsistent paragraphs.

21. As to paragraph 149 of the Principals Crossclaim, Centennial was not just a lender, and the Principals were not just borrowers, but Centennial was also a fraud victim.

22. As to paragraph 150 of the Principals Crossclaim, Centennial can neither admit nor deny because the statement is a theoretical and there is no attempt to apply it to any fact circumstance.

23. As to paragraphs 129, 144, 165, and 174 of the Principals Crossclaim, Centennial restates its responses to paragraphs 72 through 128 of the Principals Crossclaim, and any other realleged paragraphs referenced therein.

## B. AFFIRMATIVE DEFENSES

Pursuant to Florida Rule of Civil Procedure 1.110(d), Centennial alleges the following affirmative defenses to the causes of action set forth in the Principals Crossclaim:

### First Affirmative Defense: Impossibility of Status Quo Ante

For its first affirmative defense, Centennial asserts that the Principals' requests to return the parties to their respective positions status quo ante is plainly impossible. The Principals' actions in knowingly violating their obligations to Huntington, and then deceiving Centennial in order to induce Centennial to fund the Centennial Obligation, are steps that cannot be undone.

### Second Affirmative Defense: Change of Position

For its second affirmative defense, Centennial notes its change in position based on the Principals' conduct since the initiation of this action. At the outset, Centennial sought the very relief the Principals now request, this being rescission of the Centennial Mortgage; however, the

Principals were the sole impediment to counsel formulating an agreed rescission. Now, after Centennial made alternative arrangements to protect its interest, the Principals request the very relief they precluded. Centennial's reliance and subsequent change of position based on the Principals' stance bars the Principals from the very same relief they once rejected.

**Third Affirmative Defense: Adequate Remedy at Law**

For its third affirmative defense, Centennial asserts that any equitable relief requested by the Principals is plainly barred by the existence of the remedies afforded to the Principals under the loan documents evidencing the Centennial Obligation and Huntington Obligation. Because a fundamental requirement necessary for rescission of a contract is that the moving party has no adequate remedy at law, the Principals' claim for rescission is inappropriate in light of the loan documents underlying the lending relationship between Centennial and the Principals. See Collier v. Boney, 525 So. 2d 971, 972 (Fla. 1st DCA 1988) (finding that rescission was improper where plaintiff's damages could have instead been remedied in a breach of contract action).

**Fourth Affirmative Defense: Declaratory Relief is Improper**

The Principals are seeking an improper advisory opinion from the Court, as there is no case or controversy at issue over the matters alleged in the Principals Crossclaim. The Principals' claims for declaratory relief are barred as the governing documents of the Centennial Obligation are clear and unambiguous and declaratory judgment is not available to settle factual issues bearing on liability under a contract. Abruzzo v. G. Haller, 603 So.2d 1338, 1339 (Fla. 1st DCA 1992); see also Martinez v. Scanlan, 582 So. 2d 1167, 1171 (Fla. 1991) (explaining that to seek a declaratory judgment there "must exist some justiciable controversy between adverse parties that needs to be resolved for a court to exercise its jurisdiction"). Given the lack of an actual

controversy, any declaration under Chapter 86, Florida Statutes, would be an advisory opinion and therefore improper.

**Fifth Affirmative Defense: No Damages**

For its fifth affirmative defense, Centennial notes that the Principals have suffered no damages as a result of Huntington's wiring the Centennial loan proceeds back to Centennial. If, as the Principals now request, Huntington had deposited the Centennial proceeds into the registry of the Court, Centennial would have been entitled to charge interest on the Centennial Obligation at the highest rate allowed by law until repayment was made. Accordingly, Centennial's course of action saved the Principals potentially hundreds of thousands of dollars. Just as the Principals are ignoring the practical facts and legitimate equities of this controversy by refusing to stop the clock and honor their obligations to Centennial at this time, they would have demanded interpleader even though this would be bad news for all litigants.

**Sixth Affirmative Defense: Unclean Hands**

For its sixth affirmative defense, Centennial contends that the doctrine of unclean hands precludes the Principals from any recovery on the Principals Crossclaim, because one who requests equity must do equity. The Principals sue Centennial despite engaging in a fraud scheme under which the Principals misrepresented the profitability of their business and the legal status with their obligations to Huntington. Now, after deceiving Centennial as to their business, financial, and legal matters, the Principals request equitable and monetary relief for the situation they themselves are solely responsible for. This position is unreasonable, and the Principals cannot invoke the equity jurisdiction of this Court to complain about a situation they created.

**Seventh Affirmative Defense: Waiver**

For its seventh affirmative defense, the events and circumstances arising after the Principals refused to act on Centennial's requests constitute a waiver of any rights they ever may have had to assert any of the claims set forth in the Principals Crossclaim.

**Eighth Affirmative Defense: Estoppel**

For its eighth affirmative defense, Centennial contends that the conduct of the Principals in refusing to act on Centennial's requests require estoppel of any rights the Principals ever may have had to assert any of the claims set forth in the Principals Crossclaim.

**Ninth Affirmative Defense: Ratify**

For its ninth affirmative defense, by their conduct, specifically refusing to act on Centennial's requests to afford the exact relief the Principals now request, represents the Principals' ratification of Centennial's chosen course of conduct.

**Tenth Affirmative Defense: Breach of Duty of Good Faith and Fair Dealing**

For its tenth affirmative defense, Centennial notes that the Principals have failed to abide by the duty of good faith and fair dealing inherent in every contract executed in Florida. On one hand the Principals misrepresented their business, financial, and legal standing in order to induce Centennial to fund the Centennial Obligation. Once funded, and once Centennial became privy to the misrepresentations to both Centennial and Huntington by the Principals, Centennial took action to protect itself. Now, the Principals attempt to use the loan documents they fraudulently induced in order to recover against Centennial. This is a patent violation of the inherent duty of good faith and fair dealing.

**Eleventh Affirmative Defense: FCCPA Inapplicable**

Notwithstanding any other provision, communication, or insinuation to the contrary, the Mansion was owned by R&R, and unbeknownst to Centennial was part of a sophisticated (albeit

fraudulent) orderly liquidation plan for R&R in connection with the windup of its businesses, and the fact that R&R and the Principals were perpetrating a fraud on Huntington with respect to over $22 million dollars of commercial debt does not somehow convert the transaction in question into one covered by the FCCPA.

**Twelfth Affirmative Defense: Assumption of the Risk**

The Principals expressly or impliedly assumed the risk of being sued for the full balance of the Centennial Obligation under the Centennial Loan Documents when they refused to cooperate in a more constructive exit strategy, instead preferring to threaten Huntington and putting off Centennial, until Centennial changed its position quite predictably by agreeing to drop claims against Huntington and release its mortgage lien in exchange for a return of most (but not all) of the Centennial Obligation. For the Principals to knowingly defraud Huntington, willfully deceive Centennial, and then request equity from this Court, when they had the opportunity to achieve a result better than what they deserve, reflects a cynical and contumacious attitude toward the law.

DATED this 6th day of April, 2026.

/s/ John A. Anthony
**JOHN A. ANTHONY, ESQUIRE**
Florida Bar No. 731013
janthony@anthonyandpartners.com
**ANDREW J. GHEKAS, ESQUIRE**
Florida Bar Number: 0119169
aghekas@anthonyandpartners.com
**CHARLES D. PRESTON, ESQUIRE**
Florida Bar Number: 1059243
cpreston@anthonyandpartners.com
**ANTHONY & PARTNERS, PLLC**
Telephone: (813) 273-5616
Facsimile: (813) 221-4113
Attorneys for Centennial

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of April, 2026, a true and correct copy of the foregoing has been served via electronic means and/or U.S. Mail on the following parties:

John D. Emmanuel, Esquire
john.emmanuel@bipc.com
Alexandra M. Dragovich, Esquire
alexandra.dragovich@bipc.com
Tim Palmer, Esquire
timothy.palmer@bipc.com
Buchanan Ingersoll & Rooney PC
401 East Jackson Street, Suite 2400
Tampa, FL 33602
Counsel for Huntington

Michael J. Roeschenthaler, Esq.
mroeschenthaler@raineslaw.com
Mark A. Lindsay, Esquire
mlindsay@raineslaw.com
Raines, Feldman, Littrell LLP
11 Stanwix Street, Suite 750
Pittsburgh, PA 15222

Frank P. Terzo, Esquire
frank.terzo@nelsonmullins.com
Mark Raymond, Esquire
mark.raymond@nelsonmullins.com
Nelson Mullins Broad and Cassel
100 S.E. 3rd Avenue, Suite 2700
Fort Lauderdale, FL 33394

/s/ John A. Anthony
**ATTORNEY**