Filing # 246919064 E-Filed 04/27/2026 04:18:40 PM

**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT**
**IN AND FOR COLLIER COUNTY, FLORIDA**

THE HUNTINGTON NATIONAL BANK, *et al.*,

Plaintiffs,

v.

R&R EXPRESS PROPERTIES, LLC; RICHARD S. FRANCIS; KATHLEEN L. FRANCIS; and CENTENNIAL BANK;

Defendants,
_______________________________________/

**CASE NO. 2026-CA-000170**

**CIVIL DIVISION**

**CROSS-CLAIMANTS RICHARD S. FRANCIS & KATHLEEN L. FRANCIS'S REPLY TO CENTENNIAL BANK'S DEFENSES TO CROSSCLAIMS**

Cross-Claimants RICHARD S. FRANCIS and KATHLEEN L. FRANCIS (collectively, the "Francises"), pursuant to Fla. R. Civ. P. 1.140, hereby reply to the Affirmative Defenses filed by Cross-Defendant CENTENNIAL BANK ("Centennial Bank" or "Centennial") on April 6, 2026, in response to the Francises' Crossclaim, as follows:

## REPLY

### AFFIRMATIVE DEFENSE 1

The Francises deny and avoid Centennial Bank's First Affirmative Defense, wherein Centennial Bank improperly claims that the Francis Crossclaim for rescission is impossible. *See* Ans., at p. 5. That is false. Indeed, the Francises assert this claim only to enforce what Centennial claimed, in writing, it would do: unilaterally rescind the loan. *See*

FILED: COLLIER COUNTY, CRYSTAL K. KINZEL, CLERK, 04/27/2026 04:18:40 PM

Francis Crosscl., at Ex. 6 (Feb. 13, 2026 Centennial Letter); *see also* Centennial Ans., Ex. C (attaching the same letter). Centennial Bank mischaracterizes both the Francises' conduct and the nature of the equitable relief sought. Any alleged inability to return the parties to their pre-transaction positions is the result of Centennial Bank's own unilateral decisions and post-closing conduct, not any act or omission by the Francises. Centennial Bank cannot claim impossibility that it created through its own unilateral and unlawful actions to avoid equitable relief. Accordingly, Centennial Bank's first affirmative defense is legally insufficient and fails as a matter of law.

**AFFIRMATIVE DEFENSE 2**

The Francises deny and avoid Centennial Bank's Second Affirmative Defense, wherein Centennial Bank alleges the Francises are barred from seeking relief. *See* Centennial Ans., at p. 5. Again, Centennial informed the Francises – in writing – that it was unilaterally rescinding the parties' mortgage loan, demanded Huntington National Bank ("Huntington") wire Centennial the Francises' purchase funds it received from the closing agent, and then released its mortgage lien. Centennial's defense is merely an admission of its unilateral decision to rescind the purchase money mortgage without the approval of the Francises, which is unlawful. Indeed, the Francises did not consent to Centennial's conduct – this is true. Centennial Bank's "alternative arrangements" were unilateral actions that cannot extinguish the Francises' legal rights and available remedies. Accordingly, Centennial Bank's second affirmative defense is legally insufficient, factually inaccurate, and fails.

**AFFIRMATIVE DEFENSE 3**

The Francises deny and avoid Centennial Bank's Third Affirmative Defense, wherein Centennial Bank improperly alleges any equitable relief is barred by the loan documents. *See* Ans., at p. 6. Contrary to Centennial Bank's conclusory assertion, the existence of loan documents does not, in and of itself, establish that the Francises have an adequate remedy at law or bar equitable relief. Again, Centennial claimed, in writing, that it was unilaterally rescinding the loan and released its mortgage lien. The Francises seek enforcement of the rescission and related equitable relief precisely because monetary damages and contractual remedies are inadequate to address Centennial Bank's contradictory conduct and to restore the parties to their rightful positions. Moreover, Centennial inexplicably continues to send written debt collection notices regarding the rescinded loan, incorrectly alleging that interest, fees, and escrow deposits are still required from the Francises. Accordingly, Centennial Bank's third affirmative defense is legally insufficient and fails as a matter of law.

**AFFIRMATIVE DEFENSE 4**

The Francises deny and avoid Centennial Bank's Fourth Affirmative Defense wherein Centennial alleges the Francis Crossclaims seek an improper advisory opinion. *See* Centennial Ans., at p. 6. That is false. For the reasons discussed above, a genuine controversy clearly exists regarding the parties' rights and obligations under the parties' mortgage loan. Centennial claimed to be rescinding the mortgage loan and released its lien but is still unlawfully sending debt collection notices in writing demanding interest and fee payments together with the erroneous collection of escrows. These unlawful debt

collection notices were sent after the rescission of the mortgage loan. The Francises are not merely seeking clarification of contract terms but determination of their legal status and obligations considering the extraordinary circumstances – caused by Centennial's conduct – that have fundamentally altered the parties' relationship. The uncertainty regarding the frozen personal bank account and loan obligations that Centennial claims remain presents a justiciable controversy. Accordingly, the Francises' claim for declaratory relief is proper and Centennial Bank's fourth affirmative defense fails.

**AFFIRMATIVE DEFENSE 5**

The Francises deny and avoid Centennial Bank's Fifth Affirmative Defense, wherein Centennial Bank improperly claims the Francises suffered no damages from Huntington wiring loan proceeds back to Centennial Bank, because this saved the Francises from potentially owing hundreds of thousands in interest had the funds been deposited into the court registry. *See* Ans., at p. 7. The Francises have incurred damages which include, but are not limited to, unreimbursed interest payments, principal payments, closing costs, lender fees, title fees, and escrow funds still held by Centennial. Moreover, the absence of hypothetical interest payments does not equate to an absence of damages. The Francises have undoubtedly suffered damages from Centennial Bank's conduct in unilaterally rescinding the parties' purchase money mortgage loan, freezing their personal bank account, and the unlawful debt collection efforts of Centennial Bank, post-rescission. Accordingly, Centennial Bank's fifth affirmative defense is legally insufficient, factually inaccurate, and fails.

### AFFIRMATIVE DEFENSE 6

The Francises deny and avoid Centennial Bank's Sixth Affirmative Defense, which improperly invokes the doctrine of unclean hands. *See* Ans., at p. 7. Centennial Bank alleges, without factual support, that the Francises engaged in a purported "fraud scheme" by allegedly misrepresenting the profitability of their business and the status of their obligations with Huntington. *Id.* That is false. Any errors in the loan underwriting process were the result of Centennial Bank's own underwriting errors, or at most possibly a mutual mistake by the parties, and not fraud. Moreover, the parties' mortgage loan agreement expressly addresses the consequences of fraud in the loan application process:

> Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Centennial Mortg., at ¶ 8. Under the plain terms of the mortgage, the contractually agreed remedy for fraud in the loan application process is to declare a default, not rescission of the loan. Even assuming, *arguendo*, that fraud occurred – it did not – the remedy available to Centennial was not unilateral rescission of the purchase money mortgage loan, it was to declare a non-monetary default. Accordingly, Centennial Bank's sixth affirmative defense is legally insufficient and fails as a matter of law.

### AFFIRMATIVE DEFENSE 7

The Francises deny and avoid Centennial Bank's Seventh Affirmative Defense, wherein Centennial Bank alleges that the Francises refused to act on Centennial Bank's

requests and waived "any rights they ever may have had to assert any of the claims set forth." *See* Ans., at p. 8. Centennial Bank improperly asserts waiver as a defense without sufficiently alleging any basis in law or fact for these blanket assertions, rendering this defense improper. "Where there are no facts pled to support general allegations of affirmative defenses, the defenses are legally insufficient." *Leal v. Deutsche Bank Nat. Tr. Co.*, 21 So. 3d 907, 909 (Fla. 3d DCA 2009). Moreover, any alleged refusal to act on Centennial Bank's request does not constitute an express or implied waiver of the Francises legal rights to pursue claims for relief against Centennial Bank. Accordingly, Centennial Bank's seventh affirmative defense is legally insufficient and fails as a matter of law.

**AFFIRMATIVE DEFENSE 8**

The Francises deny and avoid Centennial Bank's Eighth Affirmative Defense, wherein Centennial Bank alleges that the purported refusal to act on Centennial's demands requires estoppel of any rights they may have had to seek relief in their Crossclaim. *See* Ans., at p. 8. Centennial Bank improperly asserts estoppel as a defense without sufficiently alleging any basis in law or fact for these blanket assertions, rendering this defense improper. "Where there are no facts pled to support general allegations of affirmative defenses, the defenses are legally insufficient." *Leal*, 21 So. 3d at 909. Moreover, any alleged refusal to act on Centennial's unilateral demands does not give rise to estoppel. Accordingly, Centennial Bank's eight affirmative defense fails as a matter of law.

**AFFIRMATIVE DEFENSE 9**

The Francises deny and avoid Centennial Bank's Ninth Affirmative Defense, wherein Centennial Bank alleges that the Francises ratified Centennial Bank's conduct by

their purported refusal to act. *See* Ans., at p. 8. Centennial Bank improperly asserts ratification as a defense without sufficiently alleging any basis in law or fact for these blanket assertions, rendering this defense improper. "Where there are no facts pled to support general allegations of affirmative defenses, the defenses are legally insufficient." *Leal*, 21 So. 3d at 909.

Moreover, the alleged refusal to accept Centennial's proposed resolution does not constitute ratification of Centennial's subsequent unilateral actions with the parties' loan. Indeed, mere inaction does not constitute ratification, particularly when the Francises were actively disputing Centennial Bank's unlawful position throughout the relevant time period. Accordingly, Centennial Bank's ninth affirmative defense is legally insufficient and fails as a matter of law.

**AFFIRMATIVE DEFENSE 10**

The Francises deny and avoid Centennial Bank's Tenth Affirmative Defense, which improperly states a claim for breach of duty of good faith and fair dealing. *See* Ans., at p. 8. Centennial Bank alleges, without factual support, that the Francises "fraudulently induced" Centennial Bank to fund the loan by misrepresenting their business, financial, and legal standing. *Id.* That is false. Any errors in the loan underwriting process were the result of Centennial Bank's own errors, or possibly a mutual mistake by the parties, but not fraud. Moreover, the parties' mortgage loan agreement expressly addresses the consequences of fraud in the loan application process:

> Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or

> inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Mortg., at ¶ 8. Under the plain terms of the parties' mortgage, the contractually agreed upon remedy for fraud in the loan application process is to declare a non-monetary default, not rescission of the purchase money mortgage loan.

Even assuming, *arguendo*, that fraud occurred – it did not – the remedy available to Centennial was not rescission of the loan, it was to declare a non-monetary default. Simply put, Centennial Bank's unilateral actions in rescinding the mortgage loan and freezing accounts may themselves constitute unlawful violations of its duty as a lender. Accordingly, Centennial Bank's tenth affirmative defense is legally insufficient, factually inaccurate, and fails.

**AFFIRMATIVE DEFENSE 11**

The Francises deny and avoid Centennial Bank's Eleventh Affirmative Defense, wherein Centennial Bank alleges that the Florida Consumer Collection Practices Act ("FCCPA") is inapplicable to the transaction at issue. *See* Ans., at p. 9. The Subject Loan underlying the claims asserted against Centennial Bank is a residential mortgage loan, not a "commercial debt," as Centennial Bank improperly characterizes it. Indeed, the borrowers Centennial listed and defined on the recorded mortgage are "Richard S. Francis and Kathleen L. Francis, husband and wife." *See* Crosscl. Ex. 5, at p. 1 (recorded Centennial Mortgage). The mortgage states "[t]his document was prepared by: Centennial Bank, 25 Nabco Drive, Conway, AR 72032." *Id.* Centennial's debt collection statements

for the loan are addressed to "Richard S. Francis" and "Kathleen L. Francis" individually. Crossscl., at Ex. 7. To recover under the FCCPA, a plaintiff must first show that the money being collected qualifies as a "consumer debt." *Kelly v. Duggan*, 282 So. 3d 969, 971–72 (Fla. 1st DCA 2019). The FCCPA defines "consumer debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

Fla. Stat. § 559.55(6). Here, Centennial processed and underwrote a residential mortgage loan to the Francises individually, not their company. Centennial's own loan documents and debt collection notices confirm this point. Accordingly, the FCCPA applies as a matter of law, and Centennial Bank's Eleventh Affirmative Defense fails.

**AFFIRMATIVE DEFENSE 12**

The Francises deny and avoid Centennial Bank's twelfth affirmative defense wherein Centennial alleges that the Francises "expressly or impliedly assumed the risk of being sued for the full balance of the Centennial Obligation under the Centennial Loan Documents[.]" Ans., at p. 9. Assumption of the risk is a doctrine applicable to tort actions and is not a cognizable defense to equitable claims, including the claims asserted against Centennial Bank in this action. *See Blackburn v. Dorta*, 348 So. 2d 287, 290–91 (Fla. 1977) (abolishing implied assumption of the risk in negligence actions and clarifying its limited scope); *Donaldson v. Cenac*, 675 So. 2d 228, 230 (Fla. 1st DCA 1996) (recognizing assumption of risk only in narrow circumstances involving express agreements or certain inherently dangerous activities). Accordingly, the twelfth affirmative defense fails.

Dated this 27th day of April, 2026.

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH, LLP
*Counsel for Richard S. Francis & Kathleen L. Francis*
100 S.E. 3rd Avenue, Suite 2700
Fort Lauderdale, FL 33394
P: 954-764-7060 | F: 954-761-8135

By: */s/ Rebecca Rodriguez,*
**Frank P. Terzo, Esq.**
Florida Bar No. 906263
Frank.Terzo@nelsonmullins.com
**Rebecca Rodriguez, Esq.**
Florida Bar No. 104805
Rebecca.Rodriguez@nelsonmullins.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 27, 2026, I electronically filed the foregoing document with the Clerk of the Court using the Florida Courts E-Filing Portal, which will send electronic notification to all counsel of record and interested parties pursuant to Fla. R. Gen. Prac. & Jud. Admin. 2.516.

By: */s/ Rebecca Rodriguez*
**Rebecca Rodriguez, Esq.**

## SERVICE LIST

**BUCHANAN INGERSOLL & ROONEY, PC**
*Counsel for Plaintiffs, The Huntington National Bank*
Via E-Service: John.Emmanuel@bipc.com
Alexandra.Dragovich@bipc.com
Richard.Salazar@bipc.com

**ANTHONY & PARTNERS, PLLC**
*Counsel for Defendant Centennial Bank*
Via E-Service: JAnthony@anthonyandpartners.com
AGhekas@anthonyandpartners.com
CPreston@anthonyandpartners.com

**RAINES FELDMAN LITTRELL, LLP**
*Counsel for Defendant, R&R Express Properties, LLC*
Via E-Service: MRoeschenthaler@raineslaw.com
MLindsay@raineslaw.com;
TFrancella@raineslaw.com