**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT**
**IN AND FOR COLLIER COUNTY, FLORIDA**

THE HUNTINGTON NATIONAL BANK, as lender, and THE HUNTINGTON NATIONAL BANK, as Administrative Agent and Collateral Agent,

Plaintiffs,

v.

R&R EXPRESS PROPERTIES, LLC; RICHARD S. FRANCIS; KATHLEEN L. FRANCIS; and CENTENNIAL BANK;

Defendants,
_____________________________________________/

**CASE NO. 2026-CA-000170**

**CIVIL DIVISION**

**PLAINTIFFS' OPPOSITION IN RESPONSE TO DEFENDANTS RICHARD S. FRANCIS AND KATHLEEN L. FRANCIS'S MOTION TO DISMISS**

Plaintiffs THE HUNTINGTON NATIONAL BANK, as lender ("Huntington Individually"), and THE HUNTINGTON NATIONAL BANK, as Administrative Agent and Collateral Agent ("Huntington as Agent," and, together with Huntington Individually, "Huntington" or "Plaintiffs"), by and through their undersigned counsel, respond in opposition to Defendants Richard S. Francis & Kathleen L. Francis's (collectively, the "Francises") Motion to Dismiss Complaint with Prejudice (the "Motion to Dismiss") and state as follows:

## INTRODUCTORY STATEMENT

This case involves a fraudulent scheme perpetrated by the Francises to improperly transfer over $5 million in equity value of the Property[1] from R&R[2] to themselves individually. Huntington brings this case in its capacity as a creditor of R&R, the former owner of the Property,

1 The Property is certain real Property located at 550 S. Barfield Drive, Marco Island, Florida 34145.
2 R&R has not filed a Motion to Dismiss but instead agreed to file an Answer to the Plaintiffs' Complaint.

under two separate loan facilities: (1) as the Administrative Agent on behalf of the lenders with respect to the Operating Loans[3] and (2) as the sole lender under the FL Loan.

The clear intent of this transaction was to steal the $5 million in equity value of the Property away from R&R's largest creditor (Huntington) for the personal benefit of the Francises.[4] The Complaint properly alleges each of the elements necessary to state a claim for both actual fraud and constructive fraud under Fl. Stat. § 726.105(1)(a) & 726.105(1)(b), respectively, with respect to the Transfer.

As alleged in the Complaint, in the midst of the collapse of Richard Francis' business enterprise, the Francises conspired to effectuate an undisclosed transfer of the Property from R&R to themselves, as husband and wife, to steal $5 million equity value of the Property (the "Equity Value") for themselves. As a result of the Transfer, R&R no longer owns the Property and the Equity Value is no longer available to repay the Operating Loans. Moreover, as to the FL Loan, the Transfer was effectuated in violation of the FL Loan Documents and resulted in a change in ownership of the Property without Huntington's consent or approval. The Transfer should be set aside as both intentionally and constructively fraudulent under Florida's Uniform Fraudulent Transfer Act ("UFTA") and the Property should be restored to R&R. (*See* Complaint, ¶¶ 18-22).

In their Motion to Dismiss, the Francises raise two primary arguments. *First*, they argue that the Property is not an "asset" under the UFTA because it was encumbered by a lien. *Second*, the Francises claim that because the Property was expressly excluded as collateral under the

---

[3] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Complaint. (Doc. 3).

[4] As alleged in the Complaint, Huntington is both a lender and the administrative agent under the Credit Agreement and, as such, has the authority to take actions to pursue collection of the Operating Loans on behalf of both Huntington and S&T Bank. (*See* Complaint, ¶¶ 8-9).

Operating Loans, Huntington as Agent under the Operating Loans has no standing to set aside the Transfer. Both arguments fail as a matter of law.

## ARGUMENT

### I. MOTION TO DISMISS STANDARD

Florida Rule of Civil Procedure 1.110(b) requires a complaint to include a "short and plain statement of the ultimate facts showing that the pleader is entitled to relief . . . ." Fla. R. Civ. P. 1.110(b). "A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues." *The Fla. Bar v. Greene*, 926 So. 2d 1195, 1199 (Fla. 2006). Thus, when ruling on a motion to dismiss, "a trial court must accept all factual allegations as true, [and] . . . construe all reasonable inferences in favor of the pleader." *Williams Island Ventures, LLC v. de la Mora*, 246 So. 3d 471, 475 (Fla. 3d DCA 2018).

A motion to dismiss must be denied unless it appears the plaintiff is not entitled to relief under any theory upon the facts pled in the complaint. *Ingalsbe v. Stewart Agency, Inc.*, 869 So. 2d 30, 35 (Fla. 4th DCA 2004). Therefore, "[l]eave to amend should be liberally given and a dismissal with prejudice is not proper unless the privilege to amend has been abused, or it is clear that the pleading cannot be amended to state a cause of action." *Gamma Dev. Corp. v. Steinberg*, 621 So. 2d 718, 719 (Fla. 4th DCA 1993). The Francises have not met the high burden to dismiss Huntington's claims and the Motion to Dismiss should be denied.

### II. HUNTINGTON HAS STATED CLAIMS FOR CONSTRUCTIVE AND INTENTIONAL FRAUD AND THE MOTION TO DISMISS SHOULD BE DENIED.

#### A. *Property Encumbered by a Lien is an Asset Subject to the UFTA.*

In their first argument, the Francises' assert that the Property is not an "asset" under the UFTA. The Francises are wrong.

Florida's adoption of UFTA includes Fla. Stat. § 726.102, which defines an asset in relevant part as "property of a debtor, but the term does not include . . . Property ***to the extent it is encumbered*** by a valid lien[.]" Fla. Stat. § 726.102(2)(a) (emphasis added).

The Francises claim that this language means any asset with a lien—regardless of the lien amount, property value, or transferor's equity in the property—is not subject to UFTA. To the contrary, courts in Florida and other jurisdictions have consistently held that the "to the extent" language means that a transferor's asset encumbered by a lien is not an asset up to the value of the lien. Said differently, to the extent the value of the asset in question exceeds the amount of the lien, such excess is an "asset" subject to UFTA. *See In re McCuan,* 652 B.R. 361, 371-72. (M.D. Fla. 2023).

In *In re McCuan*, the court considered whether a debtor's transfer of assets from an investment account valued at approximately $2.1 million and encumbered by a lien of only $1.4 million constituted a fraudulent transfer under Florida's UFTA. 652 B.R. 361, 371. There, the court held that the value of the assets transferred from the investment account in excess of the lien amount were assets within the meaning of Fla. Stat. § 726.102(2). *Id.*

This interpretation of UFTA's language is supported by numerous courts in other jurisdictions.[5] *See Oregon Acct. Sys., Inc. v. Greer*, 165 Or. App. 738, 743 (2000) (Oregon Court of Appeals held that UFTA's "'to the extent' language refer[s] to the pecuniary value of the lien and not to the portion of the asset securing a lien."); *Pluciennik v. Vandenberg*, 121 N.E.3d 462, 466-67 (Appellate Court of Illinois held that "[i]f an asset is fully encumbered, the transfer may not be attacked under the [UFTA]. If, on the other hand, the transfer involves an asset unencumbered by a valid lien in whole or in part, a creditor may seek relief from the transfer by

---

[5] Because many states have enacted their fraudulent conveyance laws based on the model Uniform Fraudulent Transfer Act, case law from other jurisdictions is persuasive.

demonstrating that it was made with actual intent to hinder, delay, or defraud [UFTA]."); *Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821, 837 (N.D. Iowa 2004) (Northern District of Iowa court held that "the plain meaning of [UFTA's] statutory definition of 'asset' is that 'property of a debtor' *is* an 'asset' to the extent it is *not* encumbered by a valid lien, *i.e*., to the extent that the debtor has any equity in the property.") (emphasis in original; collecting cases).

The Francises rely on the *Kapila v. CTS Equities Ltd. P'ship*, 421 So. 3d 748 (Fla. Dist. Ct. App. 2025), *reh'g denied* (Oct. 14, 2025), in support of their argument that "property does not qualify as an asset if it was encumbered by a 'valid lien' at the time of the transfer." 421 So. 3d at 752. However, the *Kapila* court considered the timing of the transfer and whether the assets in question were encumbered by a lien at the time of transfer, not whether Fla. Stat. § 726.102(2)(a)'s asset exception language applied. In that case, there was no question that the assets transferred were *fully* encumbered by a lien, where the debt owed was approximately $150 million, and the amount transferred was roughly $2.5 million. *Kapila* 421 So. 3d at 751-52. *Kapilla* therefore is distinguishable on the facts.

Here, Huntington has properly alleged that the Property was worth $10.4 million and was "transferred" from R&R to the Francises subject only to a $5.3 million lien securing the FL Loan. (*See* Complaint, ¶¶ 24-26, 40). It follows that the Property is an "asset" under the UFTA *to the extent of* the Equity Value (*i.e.,* the alleged fair market value of $10.4 million *less* the balance on the Fl Loan of $5.3 million, namely roughly $5.0 million of equity).

B. Huntington has Standing to Pursue Fraudulent Transfer Claims.

The Francises' standing arguments suffer the same fate. The Francises first argue that Huntington has no standing to avoid the Transfer as fraudulent in its capacity as a lender under the FL Loan. Second, the Francises argue that Huntington lacks standing to set aside the Transfer

with respect to the Operating Loans because the Property was expressly excluded as collateral. Neither argument supports dismissal of the Complaint.

*1. Huntington has standing as the "Stand Alone" Lender on the FL Loans.*

With respect to the first argument, the Francises incorrectly claim that Huntington in its capacity as stand-alone lender on the FL Loan has no standing to pursue the avoidance of the Transfer because it received sufficient funds to pay off the FL Loan.

To have standing to seek to avoid a fraudulent transfer, a plaintiff need only be a "creditor" as defined under the UFTA. Sections 726.105 and 726.106 of the UFTA are clear on this point. As to intentional fraud, Section 726.105 states in relevant part thereto that "a transfer made or obligation incurred by a debtor is fraudulent ***as to a creditor, …,*** whether the claim arose before or after the transfer was made or the obligation incurred, if … ." Fla. Stat. Ann. § 726.105 (West) (emphasis added). Similarly, Section 726.106, which applies to constructively fraudulent transfers states, "a transfer made or obligation incurred by a debtor is fraudulent ***as to a creditor*** whose claim arose before the claim was made or the obligation incurred, if … ." Fla. Stat. Ann. § 726.106 (West) (emphasis added). Section 726.102 defines a "creditor" as a person who has a "claim". "***Claim***," in turn, is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Fla. Stat. Ann. § 726.102 (West).

In the Complaint, Huntington alleges that it is a "creditor" with respect to the FL Loan. *See* Complaint, ¶ 24 ("The balance due on the Bank's mortgage for this property also totaled approximately $5.3 million at the time R&R transferred title"). And contrary to the Francises claim, the FL Loan has ***not*** been satisfied. Rather, the Complaint states that the funds were held by Huntington under suspicion of fraud and not applied to repayment of the Loan. *See* Complaint,

¶ 27 ("The Plaintiffs have yet to apply to funds to the FL Loan as fraud was immediately suspected …") These allegations must be accepted as true on a motion to dismiss.[6] While not essential to its claims, the Complaint also alleges that the Transfer was made in violation of the FL Loan Documents. *See* Complaint, ¶ 21 ("… the Transfer constitutes a default under the FL Loan documents"). In short, Huntington as stand-alone lender under the FL Loan has properly alleged that it is a "creditor" under the UFTA and therefore has standing to seek to set aside the Transfer.

*2. Huntington as Agent under the Operating Loans has Standing to Set Aside the Transfer.*

The same conclusion is reached with respect to Huntington's standing to set aside the Transfer as Agent with respect to the Operating Loans. In support of the Motion to Dismiss, the Francises argue that because the Credit Agreement expressly excluded the Property as collateral for the Operating Loans, it does not have standing under UFTA. Again, the Francises are wrong.

As explained above, to assert a claim under UFTA, whether for intentional fraud or constructive fraud, a plaintiff must only be ***creditor***. The statutory framework makes it clear that a ***creditor*** is a person holding ***claim***. A claim, in turn, expressly includes ***unsecured claim*****s**. *See* Fla. Stat. Ann. § 726.102 (West).

Huntington as Agent has sufficiently alleged that it was a "***creditor***" holding a "***claim***" against R&R under the Operating Loan Documents at the time of the Transfer. (*See* Complaint, ¶¶ 8-12, 25-26) ("The balance of the Operating Loans (excluding fees and costs) as of January 5, 2026, totals $40,878,970.60") ("At the time of the Transfer, R&R was insolvent, and it is jointly and severally liable under the Operating Loans that are in default"). Huntington's status as secured

[6] As explained in the Stipulation filed with the Court on March 4, 2026, those funds were subsequently returned to Centennial Bank and the FL Loan remains outstanding.

or unsecured has no bearing on the question of standing because the UFTA clearly states that a ***"claim"*** includes both ***secured*** and ***unsecured*** claims. *Id.*

Here, Huntington as Agent with respect to the Operating Loans was secured as to certain assets of R&R (and its affiliates) and unsecured as to others, such as the Property. This does not mean that R&R is free to transfer its most valuable asset for no consideration to insiders at a time when R&R is insolvent and was jointly and severally liable for $40 million in unpaid loans. Nothing in the UFTA requires a creditor to be secured as to the property in question in order to have standing to bring a claim. Put simply, the fact that the Property was not collateral for the Operating Loans is entirely irrelevant to this case.

## III. CONCLUSION

For the reasons set forth above, the Motion to Dismiss should be denied. In the event some aspect of the Motion is granted, Huntington requests leave to amend the Complaint. Fla. R. Civ. P. 1.190 ("Leave of court shall be given freely when justice so requires."); *Pangea Produce Distributors, Inc. v. Franco's Produce, Inc.*, 275 So. 3d 240, 242 (Fla. Dist. Ct. App. 2019); *Cape, LLC v. Och-Ziff Real Est. Acquisitions LP*, 370 So. 3d 1010, 1014 (Fla. Dist. Ct. App. 2023).

**WHEREFORE**, Huntington respectfully moves this Honorable Court to deny the Motion to Dismiss and to grant such relief as the Court deems just and proper under the circumstances.

Dated: April 28, 2026

Respectfully submitted,

/s/ John D. Emmanuel
John D. Emmanuel
Florida Bar No: 0475572
john.emmanuel@bipc.com
Alexandra M. Dragovich, Esq.
Florida Bar No. 1025374
alexandra.dragovich@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
401 East Jackson Street, Suite 2400

Tampa, FL 33602
Tel. No. 813 222 8180
Fax No: 813 222 8189
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on April 28, 2026 a true and correct copy of the foregoing was filed with the Court through the E-Portal which will send a notice of electronic filing of the same to all Parties and counsel of record.

/s/ John D. Emmanuel
John D. Emmanuel
Florida Bar No: 0475572

4899-5645-0461 v.4