Filing # 254451763 E-Filed 08/10/2026 08:12:07 AM

**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT**
**IN AND FOR COLLIER COUNTY, FLORIDA**

**THE HUNTINGTON NATIONAL BANK; et al.,**

Plaintiffs,

v.

**R&R EXPRESS PROPERTIES, LLC; RICHARD FRANCIS; KATHLEEN L. FRANCIS; CENTENNIAL BANK;**

Defendants.

______________________________________/

**CASE NUMBER: 2026-CA-000170**

**CIVIL DIVISION**

# RECOMMENDED ORDER DENYING PLAINTIFFS' MOTION TO PERMIT RECORDING OF LIS PENDENS (DE#9)

ATTENDANCE:

| | |
|---|---|
| ☒ Plaintiffs | ☒ Richard Salazar, Esq. & Alexandra Dragovich, Esq. Attorneys for Plaintiffs |
| ☐ Defendant | ☒ Rebecca Rodriguez, Esq. Attorney for Defendants Richard & Kathleen Francis |
| ☒ Court Reporter | ☒ John Anthony, Esq. Attorney for Defendant Centennial Bank |
| ☐ Clerk of Court | |

This cause has come on to be heard for an in-person evidentiary hearing before Magistrate Pamela Barger on **March 31, 2026,** pursuant to the Plaintiffs' **Motion to Permit Recording of Lis Pendens [Dkt. No. 09] filed January 27, 2026**. The Magistrate has jurisdiction pursuant to the Florida Rules of Civil Procedure, 1.490, *et seq*. The Court finds that an Order of Referral for the matters heard by the Magistrate was served upon the parties and that no party made a timely objection to the referral. This Court being otherwise advised, the following Findings of Fact and Conclusions of Law are made:

FILED: COLLIER COUNTY, CRYSTAL K. KINZEL, CLERK, 08/10/2026 08:12:07 AM

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. On March 18, 2022, The Huntington National Bank ("Huntington Bank") and another lender, S&T Bank ("S&T") (together the "Lenders"), agreed to provide Defendant R&R Express Properties, LLC ("R&R") and other affiliated borrowers (the "Borrowers") with several loans pursuant to a Credit Agreement. (Pl. Ex. 1); (Hearing Tr. 22:23-25; 23:1-2).

2. At the evidentiary hearing a single witness – Matthew Beatty (the "HNB Witness"), an employee of Plaintiff The Huntington National Bank ("Huntington" or "HNB") testified. The HNB Witness's testimony at times appeared to conflate different loan agreements, transactions, and amounts due, and he admitted to verifying the Complaint in this action without including all portions of the governing loan agreement HNB claims is at issue. The HNB Witness claimed the exclusion of those portions of the loan agreement from Huntington's Verified Complaint was an "oversight" and not intentional. The Court's findings of fact issued herein considered and weighed the inconsistent positions provided by the HNB Witness on key burdens of proof required in the hearing.

**a) <u>The Various Loan Documents.</u>**

i) <u>The Credit Agreement Between R&R Entities and HNB.</u>

On March 18, 2022, multiple R&R companies and HNB entered into the Second Amended and Restated Credit and Security Agreement (the "Credit Agreement"). Pls. Ex 1

Therein, the parties agreed the Credit Agreement debt would be secured as follows:

> To secure prompt payment and performance of the Obligations, each Loan Party hereby grants to Agent, for the benefit of the Agent, each Lender, and the benefit of each of their respective affiliates, a continuing security interest in and pledge of all of its collateral…In addition, to secure such prompt payment and performance of the Obligations, each Loan Party shall also assign, pledge, hypothecate and grant to agent, for the benefit of Agent and each Lender, a mortgage on its Owned Real Property, if any.

*Id.* at § 4.1. A separate lender, S&T Bank, also participates in the Credit Agreement. Evid. Hr'g Tr., 22:18–22.

ii) The 2023 R&R Express Mortgage Loan with Huntington.

In 2022, R&R Express purchased a residential property in Marco Island, Florida (the "Subject Property"). When the Subject Property was purchased, it was originally funded utilizing withdrawals from the R&R companies' corporate line of credit with Huntington. Evid. Hr'g Tr. at 28:13–22.

In 2023, Plaintiff and R&R Express entered into a separate loan agreement, solely as to the Subject Property, memorialized by a standalone promissory note and mortgage (the "HNB Mortgage"), for a loan amount of $6 Million Dollars and Zero Cents ($6,000,000.00 USD). Pls. Ex. 2 & 3. The HNB Witness testified that the HNB Mortgage was given to R&R Express solely by Huntington because S&T Bank, a participating lender with respect to the other Credit Agreement, was not interested in participating in the mortgage loan. Evid. Hr'g Tr. at 28:13–29:2. When the HNB Mortgage was given, the line of credit that originally funded the purchase of the Subject Property was repaid. Evid. Hr'g Tr. at 29:1–2.

It is undisputed that the HNB Mortgage encumbers the Subject Property in a first lien position. For tax purposes, the amount of loan obligation and lien interest HNB disclosed to the Florida Department of Revenue ("Florida DOR") was $6 Million Dollars and Zero Cents ($6,000,000.00 USD). The corresponding documentary and intangible taxes Huntington paid to Florida DOR were consistent with the obligation amount disclosed. The HNB Witness testified that to his knowledge, no subsequent documentary or intangible taxes were tendered to Florida DOR for an obligation amount exceeding the original $6 Million mortgage obligation it disclosed to the State.

iii) The Parties' Subsequent Amendments to Credit Agreement.

After R&R Express purchased the Subject Property in 2022, the Credit Agreement was amended in writing by the parties a total of ten times on the following dates: December 30, 2022; February 8, 2023; June 21, 2023; September 1, 2023; May 28, 2024; July 31, 2024; August 30, 2024; November 27, 2024; March, 2025; May 12, 2025 (collectively, the "Credit Amendments"). Pl. Ex. 1. In each of the Credit Amendments that spoke to how the debt would be secured, the parties specifically reference the Subject Property, and agree the:

> "Owned Real Property" means all Real Property set forth on Schedule 1.2(a); provided, however that **Owned Real Property shall exclude the Corporate Retreat Property**.
> ***
> **"Corporate Retreat Property" means the Real Property and improvements thereon located at 550 S. Barfield Drive, Marco Island, Florida.**

Pl. Ex. 1. (1st Am. ¶ 4, at p. 5; 6th Am., at p. 29; 7th Am., at p. 28, 8th Am. at p. 28). This is consistent with the Credit Agreement's participating lender, S&T Bank, declining to participate in the real estate debt on the Subject Property, and the creation of a separate, stand-alone note and mortgage agreement between HNB and R&R Express.

The HNB Witness verified the complaint for HNB in this case. Compl., at p. 10; Evid. Hr'g Tr., at 49:15–17. HNB's Verified Complaint alleges R&R Express granted HNB "a lien and security interest in substantially all of their assets as collateral for their Operating Loans," and refers to section 4.1 of the Credit Agreement. In its Verified Complaint allegations, HNB does not disclose the existence of, or terms of, the ten subsequent Credit Amendments the parties signed from 2022 to 2025. Exhibit A of HNB's Verified Complaint only attaches the original Credit Agreement but did not disclose or otherwise attach copies of the parties' ten Credit Amendments. When asked

about why reference or disclosure of the amendments were omitted to HNB's Verified Complaint, the HNB Witness testified that it was "an oversight." Evid. Hr'g Tr. at 50:15–51:9. The HNB Witness testified, however, that he was aware that the Subject Property is excluded as collateral for the Credit Agreement. Evid. Hr'g Tr. at 50:22–51:2.

The HNB Witness was assigned to manage the overall R&R entities' banking relationship in November 2025. Evid. Hr'g Tr. at 58:25–59:6. He attends weekly meetings with the Chief Restructuring Officer ("CRO") for Huntington to review the various R&R entity accounts and their statuses. Evid. Hr'g Tr., at 59:7–22. The HNB Witness testified that in his role as special asset manager for Huntington, part of his job duties include overseeing the customer's attempts at paydown liquidation. The HNB Witness admits that the plan for the various R&R entities was to "sell some assets." Evid. Hr'g Tr., at 35:2–7.

The HNB Witness testified that Huntington views the various R&R entities as "insolvent" but later testified that none of the R&R companies are in bankruptcy. Evid. Hr'g Tr., at 61:2–3. He also acknowledged that the incoming accounts receivable for the entities are being utilized to pay down the outstanding balances owed to HNB. Evid. Hr'g Tr., at 62:6–13.

**b) The Sale & Attempted Loan Payoff.**

While attempting to liquidate the assets of the company, the Francis Defendants obtained a personal mortgage loan from Centennial Bank (the "Centennial Mortgage"). This debt was personal and individual to the Francis Defendants and not a corporate debt of any R&R entity. In advance of the closing, Huntington issued two payoff quotes for the HNB Mortgage. Def. Exs. 6 & 7. The December 18, 2025 HNB Payoff was

$5,268,792.08. Def. Ex. 6. The January 5 HNB Payoff was $5,227,329.48. Def. Ex. 7. The HNB Witness admitted he personally reviewed the January 5 Payoff for accuracy prior to Huntington transmitting the payoff quote to R&R Express. Evid. Hr'g Tr., 60:13–17. Handling of payoffs is part of the ongoing training the HNB Witness receives with the bank in his current role but admitted that training does not include the Florida law regarding payoff quotes. Evid. Hr'g Tr., at 49:11–14.

The same day, the law office of Ronald Webster (the "Closing Agent") wired payoff funds to Huntington. Huntington admits the Closing Agent wired sufficient funds from the closing to satisfy the January 5 Payoff he approved to be issued. Evid. Hr'g Tr., at 51:16–24. Huntington admits it did not apply the wired funds to the mortgage loan balance. Evid. Hr'g Tr., at 53:4–54:7. Instead, Huntington forwarded the funds to Centennial Bank during the pendency of the instant case. Despite the pendency of this dispute, neither Huntington nor Centennial Bank interpleaded the funds in dispute with this Court. The HNB Witness admitted when asked that the forwarding of the loan payoff funds to a third-party creditor was unusual, but claimed the entire situation is unusual. Evid. Hr'g Tr., at 54:11–15. The HNB Witness testified that the decision not to apply the wired funds to the loan was not his decision but was the decision of Huntington's counsel. Evid. Hr'g Tr., at 54:21–25. The HNB Witness testified that the loan balance owed on the mortgage loan is currently around $5.3 million, but also acknowledged that if Huntington applied the purchase payoff funds wired on January 5, 2026, the loan balance would now actually be zero. Evid. Hr'g Tr., at 53:21–54:7. The HNB Witness also admitted the R&R companies are "allowed to pay the loan off if they choose." Evid. Hr'g Tr., 60:22–23.

Huntington declared related company, R&R Express Holdco, in default on the Credit Agreement the same day it received the $5.3 million payoff wire from the Closing Agent. Pl. Ex. 6; Evid. Hr'g Tr., at 55:6–21. The basis for default alleged in the notice was non-monetary default for "[f]ailure of the Borrower to timely deliver to the Agent a restructuring plan acceptable to the Agent[.]" Pl. Ex. 6. As to its timing, when asked if Huntington declared the loan in default after receiving the payoff wire from the Closing Agent, the HNB Witness advised he was not sure but "it's possible." Evid. Hr'g Tr. 55:17–21.

**3. <u>CONCLUSIONS OF LAW.</u>**

**a) <u>Standard.</u>**

The "proponent of the lis pendens bears the burden of showing that the claim affects the real property in question and that there is a substantial likelihood of success on the merits." *Chiusolo v. Kennedy*, 614 So. 2d 491, 492 (Fla. 1993). Establishing a "fair nexus" supporting a lis pendens requires the showing of a good faith, viable claim concerning the legal or equitable ownership of the subject property. *Nu-Vision, LLC v. Corporate Convenience, Inc.*, 965 So. 2d 232, 234 (Fla. 5th DCA 2007).

**b) <u>Fair Nexus Analysis of Whether Good Faith, Viable Claim Exists.</u>**

The Court notes that HNB's secured loan interest in the Subject Property is already of public record, as the HNB Mortgage is recorded in Collier County official records. Pls. Ex. 2. The recorded HNB Mortgage places the world on notice of its $6 Million first lien interest in the Subject Property. The Court finds this notice is already accomplished here by virtue of HNB's recorded $6 Million first lien position. The Court

finds that Huntington failed to establish a fair nexus of a viable, good faith UFTA claim as to the Credit Agreement for the reasons set forth below.

*i) All Parties to Loan Agreements at Issue are Not Named.*

During the evidentiary hearing, Defendants' counsel noted that other R&R entities – which Plaintiffs claim are debtors giving rise to a purported loan agreement breach – are not presently before this Court. Evid. Hr'g Tr. 17:20–25. Upon a review of the Complaint and Credit Agreement, Defendants are correct. Pl. Ex. 1. Plaintiffs' default notice presented during the hearing was a default notice to "R&R Express Holdco, Inc." and not the Defendant, R&R Express Properties, LLC. Pls. Ex. 6. R&R Express Holdco is not currently a party to this case. Huntington's UFTA claims, as currently pleaded, arise from a debt involving several other parties who are not before this Court.

*ii) HNB's Claims for UFTA Relief.*

*A. The Credit Amendments Exclude the Subject Property.*

With respect to the Credit Agreement, paragraph 4.1 states "[i]n addition, to secure such prompt payment and performance of the Obligations, each Loan Party shall also assign, pledge, hypothecate and grant to agent, for the benefit of Agent and each Lender, a mortgage on its Owned Real Property, if any." Pl. Ex. 1. The Court notes the original agreement predates the purchase of the Subject Property in 2022. Notably, after R&R's 2022 purchase, the parties amended the Credit Agreement ten separate times, and several of those amendments which spoke to collateral securing the Credit Agreement debt expressly identify and excluded the Subject Property from the Credit Agreement's definition of "Owned Real Property." This is consistent with HNB Witness testimony that S&T was not interested in participating in the loan with the Subject Property. Evid.

Hr'g Tr. 31:4–5. HNB offered no rebuttal argument or counter-evidence to address this exclusionary language of the Credit Amendments and presented no explanation as to why the exclusionary language of those amendments would not prove fatal to their UFTA claims under the Credit Agreement. To the extent Huntington argues it may have a future claim against the Subject Property if those agreements are defaulted, those potential future claims suggest that permitting a lis pendens at this juncture would be a prejudgment writ of attachment and would be improper. *Musselman v. Cameron (In Re Cameron)*, 359 B.R. 823, 824 (M.D. Fla. Bankr. 2006) (holding the "trustee's Amended Complaint now consists only of the fraudulent transfer counts. As such, it would be improper to allow the Lis Pendens to remain in place during the pendency of this litigation. The result is no different than any other action where parties are required to wait until after a judgment is entered to pursue collection rights and remedies.").

*B. <u>Payoff Funds Issue.</u>*

HNB also admitted that the R&R Express's mortgage loan balance would have been satisfied if HNB applied the $5.3 million payoff when it received it on January 5, 2026, and conceded that the amount of the wired funds were a "full payoff." Evid. Hr'g Tr., at 36:15–18, 53:21–54:7. HNB admitted the forwarding of the wired funds to a different bank without customer approval and conceded that not applying it to the mortgage loan as intended, was "unusual." Evid. Hr'g Tr., 54:11–15. This is of import because in Florida, the requirement for processing loan payments made pursuant to loan payoff letters is as follows:

> Within 60 days after the unpaid balance of a loan secured by a mortgage has been fully paid or paid pursuant to an estoppel letter under subsection (1), whichever is earlier, the mortgagee or mortgage servicer shall execute in writing an instrument acknowledging release of the mortgage; have the

> instrument acknowledged, or proven, and send it or cause it to be sent for recording in the official records of the proper county; and send or cause to be sent the recorded release to the mortgagor or record title owner of the property.

Fla. Stat. § 701.04(2)(a). The 60 days have lapsed and as of the date of the evidentiary hearing, HNB still claims to be owed the $5.3 million on the mortgage loan and has not released its mortgage of record.

The Court finds there is a compelling factual dispute as to the true amounts due and owing to HNB after its handling of the payoff wire on January 5, 2026.

*C. Documentary stamps and intangible stamp taxes.*

By statute, courts are prohibited from enforcing any lien interest which exceeds the obligation amount disclosed and taxed to Florida DOR. "The mortgage, trust deed, or other instrument **shall not be enforceable in any court of this state** as to any such advance unless and until the tax due thereon upon each advance that may have been made thereunder has been paid." Fla. Stat. § 201.08(b)(emphasis supplied). "**No mortgage, deed of trust, or other lien upon real property situated in this state shall be enforceable in any Florida court**, nor shall any written evidence of such mortgage, deed of trust, or other lien be recorded in any public record of the state, until the nonrecurring tax imposed by this chapter, including any taxes due on future advances, has been paid and the clerk of circuit court collecting the tax has noted its payment on the instrument or given other receipt for it." Fla. Stat. § 199.282(4)(emphasis supplied). "Courts are 'without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.' " *Hill v. Davis*, 70 So. 3d 572, 575 (Fla. 2011)(internal citations omitted). " 'Thus, if the meaning of the statute is clear then this

Court's task goes no further than applying the plain language of the statute.' " *Id.* at 575–76 (quoting *GTC, Inc. v. Edgar*, 967 So. 2d 781, 785 (Fla. 2007)).

Applied here, the loan documents confirm the R&R obligation amount HNB disclosed to the Florida DOR for the Subject Property was $6 million. Pls. Ex. 2 & 3. HNB admitted it has not paid any supplemental intangible or documentary tax in excess of the original $6 million obligation originally disclosed to Florida DOR for a debt obligation encumbering the Subject Property. *see also* Evid. Hr'g Tr. 62:19–63:13.

As a result, the Court cannot entertain or enforce any loan interest HNB claims to have in the Subject Property beyond the $6 Million obligation HNB disclosed to Florida DOR.

**Conclusion.**

In sum, the record evidence before the Court during the evidentiary hearing establishes that HNB's loan interest in the Subject Property was limited to the $ 6 Million mortgage loan obligation amount HNB disclosed to Florida DOR. HNB provided a payoff quote for the mortgage on December 18, 2025 stating a payoff amount for the mortgage was $5,268,792.08. A few days later, HNB provided a second payoff quote in writing on January 5, 2026 for the HNB mortgage quoting a payoff balance of $5,227,329.48. HNB received those payoff funds the same day from Defendants' closing agent via wire transfer. HNB failed to apply the payoff funds to the loan and release its lien as required by statute. HNB issued a default letter to a related R&R entity the same day it received the loan payoff funds it refused to apply to the loan balance owed. HNB admits it subsequently transmitted the payoff funds to another financial institution without obtaining customer authorization to do so.

The separate Credit Agreement debt with additional R&R entities which HNB claims should also attach to the Subject Property is also problematic. For one, the majority of parties to that loan agreement are not before this Court. Additionally, tabling the documentary stamp and intangible tax defects which may bar any court enforcement of that debt as to this real property, there are several subsequent amendments which expressly exclude the Subject Property from the definition of real estate collateral for the Credit Agreement. No explanation or rebuttal was presented by HNB to justify why the Credit Amendments are not fatal to their UFTA claim for fraudulent transfer relief under the Credit Agreement. HNB also failed to attach any of the ten Credit Amendments – which this Court finds compelling and relevant here – to its Verified Complaint for UFTA relief. There is evidence before the Court that the exclusionary language in the Credit Amendments may preclude the UFTA relief sought by HNB. As a result, based on the evidence presented during the evidentiary hearing, the Court does not find that Plaintiffs satisfied their burden of demonstrating a fair nexus of a viable, good faith claim for UFTA relief against the Defendants on the Credit Agreement, as amended.

**c) <u>Lis Pendens Bond Not Applicable.</u>**

Lastly, the appraisal in the record demonstrates that as of December 12, 2024, the Subject Property was valued at $10.4 million dollars. Pls. Ex. 4. Defendants acquiesced to that valuation for purpose of the Court's lis pendens bond consideration. Evid. Hr'g Tr. 78:17–79:9. However, because the Court finds that the threshold fair nexus issue was not satisfied by HNB, further analysis of the required lis pendens bond is not necessary in this instance and that issue is moot.

## RECOMMENDED ORDER OF THE MAGISTRATE

Based upon the above-stated Findings of Fact and Conclusions of Law, the Magistrate submits the following Recommended Order for the approval of the Court:

1. For the reasons stated herein, Plaintiffs' Motion to Permit Lis Pendens [Dkt. No. 09] is **DENIED**.

**PLEASE READ CAREFULLY (Language in Bold is Required by Fla. R. Civ. P. 1.490)**:

**IF YOU WISH TO SEEK REVIEW OF THE REPORT AND RECOMMENDATIONS MADE BY THE MAGISTRATE, YOU MUST FILE EXCEPTIONS IN ACCORDANCE WITH FLORIDA RULE OF CIVIL PROCEDURE 1.490(i). YOU WILL BE REQUIRED TO PROVIDE THE COURT WITH A RECORD SUFFICIENT TO SUPPORT YOUR EXCEPTIONS OR YOUR EXCEPTIONS WILL BE DENIED. A RECORD ORDINARILY INCLUDES A WRITTEN TRANSCRIPT OF ALL RELEVANT PROCEEDINGS. THE PERSON SEEKING REVIEW MUST HAVE THE TRANSCRIPT PREPARED IF NECESSARY FOR THE COURT'S REVIEW.**

The hearing before the Magistrate was electronically recorded by the Court. A party may request an electronic certified copy of the proceeding on CD, at that party's expense, and may then have the recording transcribed, at that party's expense. Providing the Court with a copy of the CD, instead of a certified written transcript, is insufficient for review by the Court of exceptions. Media request forms, procedures, and fees, and a list of approved Transcriptionists are available on the Court's website, www.ca.cjis20.org , or by calling the Court's Electronic Court Reporting Department at 239-533-8207. However, if the below box is checked, one of the parties elected to retain, at that party's own expense, a live Court Reporter who was present for the purpose of creating the official record of the proceeding. Accordingly, any request for a transcript of the proceeding must be submitted to that Court Reporter.

☒_A live Court Reporter created the official record of the proceeding, and that Court Reporter's name and address is as follows: Ms. Hillary Koby, Commission Number 343877, Esquire Deposition Solutions, 677 N. Washington Blvd., Sarasota, FL 34236

All parties ☐ have ☒_have not waived the ten day period in which to file exceptions to the Report and Recommendations of the General Magistrate.

Dated: August 10, 2026.

BY: Pamela Barger

HONORABLE PAMELA BARGER
MAGISTRATE, TWENTIETH JUDICIAL CIRCUIT

SERVICE LIST

BUCHANAN INGERSOLL & ROONEY, PC
*Counsel for Plaintiffs, The Huntington National Bank*
Via E-Service: John.Emmanuel@bipc.com
Alexandra.Dragovich@bipc.com
Richard.Salazar@bipc.com

NELSON MULLINS RILEY & SCARBOROUGH, LLP
*Counsel for Defendants Richard S. Francis & Kathleen L. Francis*
Via E-Service: Rebecca.Rodriguez@nelsonmullins.com
Frank.Terzo@nelsonmullins.com
Sophie.Labarge@nelsonmullins.com
Andre.Festekjian@nelsonmullins.com

ANTHONY & PARTNERS, PLLC
*Counsel for Defendant Centennial Bank*
Via E-Service: JAnthony@anthonyandpartners.com
AGhekas@anthonyandpartners.com
CPreston@anthonyandpartners.com

RAINES FELDMAN LITTRELL, LLP
*Counsel for Defendant, R&R Express Properties, LLC*
Via E-Service: MRoeschenthaler@raineslaw.com
MLindsay@raineslaw.com;
TFrancella@raineslaw.com