IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, FLORIDA

THE HUNTINGTON NATIONAL BANK, as lender, and THE HUNTINGTON NATIONAL BANK, as Administrative Agent and Collateral Agent,

Plaintiffs,

CASE NO.: 11-2026-CA-000170-00001-01

v.

R&R EXPRESS PROPERTIES, LLC, RICHARD S. FRANCIS, KATHLEEN L. FRANCIS, and CENTENNIAL BANK,

Defendants.
_____________________________________/

**NOTICE OF FILING MATERIALS IN SUPPORT OF PLAINTIFFS' EXCEPTIONS TO RECOMMENDED ORDER DENYING PLAINTIFFS' MOTION TO PERMIT RECORDING OF LIS PENDENS**

Plaintiffs, The Huntington National Bank, as lender, and The Huntington National Bank, as Administrative Agent and Collateral Agent (collectively, "Plaintiffs"), through undersigned counsel, submit the additional materials identified below in support of Plaintiffs' Exceptions to Recommended Order Denying Plaintiffs' Motion to Permit Recording of Lis Pendens (the "Exceptions").

**I. Materials Submitted**

1. Plaintiffs' Proposed Recommended Order Granting Plaintiffs' Motion to Permit Lis Pendens (the "Proposed Recommended Order").

**II. Basis for Filing**

1. Plaintiffs filed their Exceptions on August 19, 2026, pursuant to Florida Rule of Civil Procedure 1.490(i).

2. Under Rule 1.490(j), a "party filing exceptions to the magistrate's report must provide the court in advance of the hearing a record sufficient to support that party's exceptions." Fla. R. Civ. P. 1.490(j).

3. Plaintiffs' Exceptions cite to documents available on the case docket and to the transcript from the March 31, 2026 hearing on Plaintiffs' Motion to Permit Recording of Lis Pendens, which is attached to the Exceptions as Exhibit A.

4. The Proposed Recommended Order was submitted to the Magistrate following that hearing and sets forth Plaintiffs' proposed factual and legal findings.

5. Accordingly, Plaintiffs submit the Proposed Recommended Order in support of their Exceptions and to ensure compliance with Rule 1.490(j).

Dated: August 20, 2026 Respectfully submitted,

*/s/ John D. Emmanuel*
John D. Emmanuel
Florida Bar No: 0475572
john.emmanuel@bipc.com
Alexandra M. Dragovich, Esq.
Florida Bar No. 1025374
alexandra.dragovich@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
401 East Jackson Street, Suite 2400
Tampa, FL 33602
Tel. No. 813 222 8180/Fax No: 813 222 8189
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 20, 2026 pursuant to Florida Rules of Judicial Administration, Rule 2.516, I electronically filed the foregoing Notice of Serving First Request for Interrogatories with the Clerk of Court by using the Florida Court E-Portal Filing System.

*/s/ John D. Emmanuel*
John D. Emmanuel, FBN: 475572

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, FLORIDA

THE HUNTINGTON NATIONAL BANK, as lender, and THE HUNTINGTON NATIONAL BANK, as Administrative Agent and Collateral Agent,

Plaintiffs, CASE NO.: 11-2026-CA-000170-00001-01

v.

R&R EXPRESS PROPERTIES, LLC, RICHARD S. FRANCIS, KATHLEEN L. FRANCIS, and CENTENNIAL BANK,

Defendants.
_____________________________________/

**RECOMMENDED ORDER GRANTING PLAINTIFFS' MOTION**
**<u>TO PERMIT RECORDING OF LIS PENDENS</u>**

ATTENDANCE:

| | | | |
|---|---|---|---|
| ☒ | Plaintiff | ☒ | Attorney for Plaintiff |
| ☐ | Defendant | ☒ | Attorney for Defendant |
| ☒ | Court Reporter ECR | ___ | Clerk of Court |

This cause has come on to be heard before Magistrate Pamela Barger on **March 31, 2026,** pursuant to the Plaintiffs' **Motion to Permit Recording of Lis Pendens (the "Motion ")**. The Magistrate has jurisdiction pursuant to the Florida <u>Rules of Civil Procedure</u>, 1.490, *et seq*. The Court finds that an Order of Referral for the matters heard by the Magistrate was served upon the parties and that no party made a timely objection to the referral. This Court being otherwise advised, the following <u>Findings of Fact</u> and <u>Conclusions of Law</u> are made:

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

1. On March 18, 2022, The Huntington National Bank ("Huntington Bank") and another lender, S&T Bank ("S&T") (together the "Lenders"), agreed to provide Defendant R&R Express Properties, LLC ("R&R") and other affiliated borrowers (the "Borrowers") with several loans pursuant to a Credit Agreement. (Pl. Ex. 1); (Hearing Tr. 22:23-25; 23:1-2).

2. The Credit Agreement loans include a revolving loan commitment of up to $85 million (the "Revolving Loans"). (Pl. Ex. 1); (Hearing Tr. 20:22-25; 21:1-3).

3. As of March 31, 2026, R&R owes Plaintiffs $12.2 million on the Revolving Loans. (Hearing Tr. 28:1-4).

4. Huntington Bank and S&T also provided R&R and the other affiliated Borrowers with a term loan in the amount of $3,675,000 ("Term Loan" together with the Revolving Loans, the "Operating Loans"). (Hearing Tr. 21:17-21). The loan documents for the Operating Loans are referred to as the Operating Loans Documents.

5. Pursuant to the Credit Agreement, R&R and the other affiliated Borrowers granted Plaintiff, in its capacity as collateral agent for the Lenders, a lien and security interest in substantially all of their assets as collateral for the Operating Loans. *See* Pl. Ex. 1, Article 4, Section 4.1 (Security Interest in the Collateral) ("To secure the prompt payment and performance of the Obligations, each Loan Party hereby grants to Agent, for the benefit of the Agent, each Lender, and the benefit of each of their respective Affiliates, a continuing security interest in and a pledge of all of its Collateral.").

6. In addition to the Operating Loans, Huntington Bank issued a mortgage loan (the "Florida Loan") (and together with the Operating Loans, the "Loans") to R&R, which was collateralized by a "corporate retreat" residence located at 550 S. Barfield Drive, Marco Island, Florida 34145 (the "Marco Island Property"). (Hearing Tr. 28:8-25; 29:1-2). The loan documents for the Florida Loan are referred to herein as the Florida Loan Documents. (Pl. Ex. 2 and 3).

7. The Marco Island Property had been previously appraised at $10.4 million by an outside appraiser retained by Huntington. (Pl. Ex. 4); (Hearing Tr. 32:6-14; 21-25; 33:1-2; 17-20).

8. R&R purchased the Marco Island Property on January 2, 2023, for $8,750,000. (Def. Ex. 1).

9. The majority owner of R&R is Defendant Richard S. Francis. (Hearing Tr. 27:18-25). He is therefore an insider of R&R.

10. Section 7.1 of the Credit Agreement prohibits R&R Express from selling, pledging or transferring any assets or property except for certain assets described in Section 7.1(b), without the consent of Huntington Bank (the "No Transfer Provision").

(Pl. Ex. 1); (Hearing Tr. 25:21-25; 26:1-16). This prohibition applies regardless of whether the asset serves as collateral for the Operating Loans.

11. The No Transfer Provision is a standard provision in a credit security agreement, and its purpose is to prevent a company from disposing of its assets in general without permission of the lender. (Hearing Tr. 26:17-25; 27:1-3).

12. R&R and its affiliates are in the trucking logistics industry. (Hearing Tr. 34:5-13).

13. During the COVID period, the trucking industry rapidly expanded by adding trucks and drivers. However, as supply chains later stabilized, the entire industry found itself with excess capacity. This excess capacity led to a massive drop in prices and a “freight recession,” which has persisted from 2022 to the present. (Verified Compl. ¶ 15).

14. R&R and the additional Borrowers’ financial condition steadily declined during the freight recession, and throughout 2025, this decline accelerated rapidly. (Verified Compl. ¶ 16).

15. During 2025, R&R and the other affiliated Borrowers reported significant monthly operating losses which indicated that R&R and the other Borrowers were burning through cash at an alarming rate. (Hearing Tr. 34:14-19).

16. The collective net operating losses of R&R and the other Borrowers in 2025 eventually totaled a staggering $25.9 million. (Verified Compl. ¶ 16).

17. Plaintiffs suspected that the burn rate was even higher than reported by R&R and the other Borrowers. *Id.*

18. Prior to December 10, 2025, an advisor retained by the Borrowers produced a preliminary restructuring plan which required additional capital of at least $25 million. The proposed source of that capital was the existing lenders (i.e., Plaintiffs). (Hearing Tr. 34:20-25; 35:1-7).

19. The Plaintiffs engaged a financial advisor to review and analyze the Borrowers’ Advisor’s preliminary restructuring plan. After reviewing Borrowers’ Advisor’s analysis with the assistance of their own financial advisor, Plaintiffs did not find the preliminary restructuring plan to be viable. (Hearing Tr. 35:7-12).

20. The deterioration of the Borrowers' financial condition accelerated in late 2025. The Borrowers lacked sufficient liquidity to meet their ongoing obligations and had accrued approximately $65 million in trade payables. (Verified Compl. ¶ 20).

21. By mid-December 2025, Plaintiffs had recommended that the Borrowers' wind down their affairs in an orderly manner. Despite the requests of the Plaintiffs, the Borrowers, including R&R, refused to do so and continued to operate and incur debts that they could not pay. *Id.*

22. In the midst of this financial crisis, and while negotiations among Plaintiffs, R&R and the other Borrowers were ongoing, on December 29, 2025, Defendant Richard S. Francis ("R. Francis") (the principal of R&R and the other Borrowers) executed a plan to transfer the equity in the Marco Island Property away from R&R to R. Francis and his wife, Defendant Kathleen L. Francis ("K. Francis") (R. Francis and K. Francis collectively, the "Francises"). (Hearing Tr. 36:9-11).

23. The first step in this plan was for R. Francis to cause R&R to transfer title to the Marco Island Property from R&R to R. Francis and K. Francis, as husband and wife (the "Transfer"). The Deed effectuating this Transfer was recorded on December 29, 2025. (Pl. Ex. 5); (Hearing Tr. 40:18-24). As the spouse of R. Francis, K. Francis is also an insider. F.S. §726.102 (8)(b)(6).

24. R. Francis executed the special warranty deed on behalf of R&R. (Pl. Ex. 5).

25. Despite the restriction in 7.1(b) prohibiting the sale or transfer of assets or property except for those assets described in Section 7.1(b), R&R conveyed the Marco Island Property without the Plaintiffs' knowledge or consent, even though the parties were communicating on a daily basis regarding R&R's financial situation at that time. (Hearing Tr. 35:17-25; 36:1-8). R. Francis called the customer service department to get the payoff quote, which is outside the norm for a relationship of this size. (Hearing Tr. 37:5-12).

26. The Transfer constitutes a default under the Operating Loans Documents. (Hearing Tr. 37:25; 38:1-6).

27. On the same day as the Transfer, R. Francis and K. Francis granted Centennial Bank a mortgage on the Property, which was subsequently recorded two weeks later. (Def. Ex. 5).

28. The Closing Disclosure reveals that the Centennial loan amount was approximately $5.3 million. (Hearing Tr. 53:21-24); (Verified Compl. ¶ 22).

29. At the time of the Transfer, R&R was insolvent. (Hearing Tr. 42:10-24).

30. R&R is jointly and severally liable under the Operating Loans that are in default. (Verified Compl. ¶ 25).

31. The balance of the Operating Loans (excluding fees and costs) as of January 5, 2026, totaled approximately $40,878,970.60. (Verified Compl. ¶ 26).

32. By letter dated January 5, 2026, Huntington Bank formally notified R&R that it was in default of the Operating Loans ("the Default Notice Letter"). (Pl. Ex. 6); (Hearing Tr. 44:2-10).

33. Prior to January 5, 2026, Huntington had informed R&R verbally that it was in default of the Operating Loans. (Hearing Tr. 44:11-15).

34. On January 5, 2026, Huntington Bank received a wire in the amount of $5,279,776.20 from a previously unknown source (the Law Office of Ronald Webster) (the "Wire"), purportedly as payment on the Florida loan. (Hearing Tr. 36:15-21). Huntington Bank held the funds in suspense because it suspected fraud. (Hearing Tr. 40:1-14).

35. Prior to receiving the payment, Plaintiffs were not aware of the Transfer of the Marco Island Property. (Hearing Tr. 36:4-21).

36. After Plaintiffs filed this lawsuit, Centennial contacted Plaintiffs and demanded the return of the funds that were being held in suspense. In response to the demand, Huntington returned the funds to Centennial. (Hearing Tr. 43:12-15).

37. R&R transferred the Marco Island Property, which was appraised at over $10,000,000, to insiders (R. Francis and K. Francis) for no consideration. The doc stamps placed on the Deed when it was recorded reflected that the transfer was made for no consideration. (Hearing Tr. 41:5-16).

38. R&R received no value for the transfer of the equity in the Marco Island Property at a time when R&R owed Plaintiffs at least $40,000,000. The Transfer caused

harm to Plaintiffs because as creditors, Plaintiffs would have been entitled to collect on any excess equity in the Marco Island Property. (Hearing Tr. 42:25; 43:1-4).

39. Although Plaintiffs have been collecting accounts receivable to pay down the principal balance of the Operating Loans, R&R has not been making any payments on the Operating Loans. (Hearing Tr. 61:7-25; 62:1-5). The amounts now being collected from the accounts receivable is a very small amount, as most of R&R's largest customers have ceased payments. (Hearing Tr. 62:16-18).

40. Section 48.23, Florida Statutes, governs notices of *lis pendens* and the prerequisites for filing them. Fla. Stat. § 48.23(3) provides that when, as here, the underlying lawsuit is not founded on a "duly recorded instrument," "the court shall control and discharge the recorded notice of *lis pendens* as the court would grant and dissolve injunctions." *See* Fla. Stat. § 48.23(3).

41. When controlling a *lis pendens* in cases that are not founded on a recorded instrument, the Court must balance: (a) the lis pendens proponent's need to place non-parties on notice of the proponent's claims affecting the owner's real property; and (b) the damages that may be suffered by the owner should the proponent's claims fail to prevail. *LB Judgment Holdings, LLC v. Boschetti*, 271 So. 3d 115, 119 (Fla. 3d DCA 2019).

42. The Court's balancing test is accomplished through two considerations: (1) is there a "fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit; and (2) if there is such a nexus, what is the appropriate amount of a *lis pendens* bond to be required of the proponent, bearing a reasonable relationship to the amount of damages which the property-holder defendant demonstrates will likely result if it is later determined that the notice of *lis pendens* was unjustified." *Id.*

43. The evaluation of the "fair nexus" factor is not a trial or mini-trial on the merits of all elements of the *lis pendens* proponent's claims. *Id.* Instead, "[t]he relevant question is whether alienation of the property or the imposition of intervening liens…conceivably could disserve the purposes for which lis pendens exists. Where the answer is yes, fair nexus must be found." *Id.* (quoting *Chiusolo v. Kennedy*, 614 So. 2d 491, 492 (Fla. 1993).

44. Put simply, the *lis pendens* proponent must make a "minimal showing that there is at least some basis for the underlying claim[] [a]nd…show that he or she has a good faith basis to allege facts supporting a claim, and that the facts alleged would at least state a viable claim."). *Nu-Vision, LLC v. Corporate Convenience, Inc.*, 965 So. 2d 232, 236 (Fla. 5th DCA 2007).

45. When a suit involving real property is, as in the present case, not based on a duly recorded instrument but there is a fair nexus proven, the control and discharge of the *lis pendens* is at the discretion of the trial judge. *See Ortiz v. Weiss*, 227 So. 3d 689, 691 (Fla. 3d DCA 2017).

46. In the instant case, the testimony of Plaintiffs' corporate representative, Matt Beatty, was found to be credible and truthful. The Francises did not testify, nor did they appear at the hearing. Further, the Francises did not present any testimony that they would be injured by the recording of the Lis Pendens. Given the testimony provided, the Magistrate finds that Plaintiffs demonstrated a fair nexus between the alleged fraudulent transfer and the real property encumbered by the proposed *lis pendens*. As set forth in Mr. Beatty's testimony and the documentary evidence submitted to the Magistrate, Plaintiffs have a good faith basis to allege facts supporting their fraudulent transfer claim, and the facts submitted into evidence state a viable claim under the Florida Uniform Fraudulent Transfer Act ("FUFTA").

47. Specifically, the Magistrate determines that the evidence demonstrates a good faith basis for Plaintiffs to claim that the Transfer should be avoided because it was made with the actual intent to defraud the Plaintiffs and because it was made for grossly inadequate consideration while R&R was insolvent. The evidence further shows that the Marco Island Property is valued at over 10 million dollars. Meanwhile, the Deed from R&R to the Francises and the Collier County Property Appraiser's records demonstrate that the Francises paid no consideration for the Marco Island Property. Further, Defendants submitted no evidence showing that the proceeds of the Centennial loan in the amount of approximately $5,300,000 constituted reasonable equivalent value for the Marco Island Property, which had an appraised value of $10,400,000. Further, the Centennial loan proceeds were returned to Centennial after it made demand for their return.

48. Further, Plaintiffs have standing to challenge the sale of the Subject Property as a fraudulent transfer under the FUFTA. The Marco Island Property qualifies as an "asset" subject to FUFTA because the value of the Marco Island Property (approximately $10 million) exceeds Plaintiffs' first mortgage lien on the Marco Island Property (approximately $5.3 million). *See* Fla. Stat. § 726.102(2)(a) ("'Asset' means property of a debtor, but the term does not include: Property ***to the extent it is encumbered*** by a valid lien") (emphasis added); *see also In re McCuan*, 652 B.R. 361, 371-72 (M.D. Fla. 2023) (holding that, to the extent the value of accounts exceeded the amount of the third-party lender's lien, the funds in the accounts were "assets" of the debtor, and their transfer, for no consideration, was avoidable as actually fraudulent to creditors under the Florida Uniform Fraudulent Transfer Act).

49. Additionally, the Magistrate finds that although Plaintiffs are secured creditors with respect to the mortgage, Plaintiffs are also unsecured creditors to the extent that the obligations owed to Plaintiffs do not get paid and are not covered by the collateral. Plaintiffs have an unsecured claim, and as unsecured creditors, have a right to bring claims under FUFTA. *See* Fla. Stat. § 726.102(4).

50. Finally, the Magistrate finds that the No Transfer Provision in the Credit Agreement was not limited to "collateral," which is a standard provision in a credit security agreement such as the one here. Specifically, the No Transfer Provision prohibits the transfer of *assets* – not collateral – except for those assets that are specifically identified in the No Transfer Provision (Section 7.1(B) of Pl. Ex. 1)). The Marco Island Property does not fall into any of those categories.

51. The Magistrate concludes that Plaintiffs' need to place non-parties on notice of their claims affecting the Marco Island Property strongly outweighs any damages that could theoretically be suffered by the Francises should Plaintiffs' claims fail to prevail. If a *lis pendens* is not recorded, the Francises have the opportunity to transfer or further encumber the Marco Island Property to an unsuspecting third party. Further, another creditor can record a lien on the Property.

52. The Magistrate further concludes that there will be no harm to the Francises if a *lis pendens* is recorded because they continue to live in and use the Marco Island Property.

53. The recording of the *lis pendens* merely serves as constructive notice of the pending litigation, and not an encumbrance or lien on the Marco Island Property. In granting leave to record the *lis pendens*, the Court will preserve its authority to enter judgment setting aside the Transfer as contemplated by Fla. Stat. § 726.105(a) and (b).

54. Finally, the Magistrate does not find it necessary to require Plaintiffs to post a bond as the Francises will not suffer any damages by virtue of the recording of the Lis Pendens.

## RECOMMENDED ORDER OF THE MAGISTRATE

Based upon the above-stated Findings of Fact and Conclusions of Law, the Magistrate submits the following Recommended Order for the approval of the Court:

A. The Court finds that Plaintiffs have satisfied their burden in demonstrating a fair nexus between the alleged fraudulent transfer and the Marco Island Property at issue, and Plaintiffs' need to place non-parties on notice of their claims outweighs any potential harm to the Francises.
B. As such, Plaintiffs' Motion to Permit Recording of Lis Pendens is hereby **GRANTED.**
C. Plaintiffs are hereby authorized to record their *lis pendens* on the Marco Island Property in the public records of Collier County, Florida. The *lis pendens* shall remain recorded and in effect until the conclusion of this litigation.

**PLEASE READ CAREFULLY (Language in Bold is Required by Fla. R. Civ. P. 1.490)**:

**IF YOU WISH TO SEEK REVIEW OF THE REPORT AND RECOMMENDATIONS MADE BY THE MAGISTRATE, YOU MUST FILE EXCEPTIONS IN ACCORDANCE WITH FLORIDA RULE OF CIVIL PROCEDURE 1.490(i). YOU WILL BE REQUIRED TO PROVIDE THE COURT WITH A RECORD SUFFICIENT TO SUPPORT YOUR EXCEPTIONS OR YOUR EXCEPTIONS WILL BE DENIED. A RECORD ORDINARILY INCLUDES A WRITTEN TRANSCRIPT OF ALL RELEVANT PROCEEDINGS. THE PERSON SEEKING REVIEW MUST HAVE THE TRANSCRIPT PREPARED IF NECESSARY FOR THE COURT'S REVIEW.**

The hearing before the Magistrate was electronically recorded by the Court. A party may request an electronic certified copy of the proceeding on CD, at that party's expense, and may then have the recording transcribed, at that party's expense. Providing the Court with a copy of the CD, instead of a certified written transcript, is insufficient for review by the Court of exceptions. Media request forms, procedures, and fees, and a list of approved Transcriptionists are available on the Court's website, www.ca.cjis20.org , or by calling the Court's Electronic Court Reporting Department at 239-533-8207. However, if the below box is checked, one of the parties elected to retain, at that party's own expense, a live Court Reporter who was present for the purpose of creating the official record of the proceeding. Accordingly, any request for a transcript of the proceeding must be submitted to that Court Reporter.

☐ A live Court Reporter created the official record of the proceeding, and that Court Reporter's name and address is as follows:

Hillary Koby, Court Reporter
Esquire Deposition Solutions
1 North Dale Mabry Hwy
Suite 350
Tampa, FL 33609

All parties ☐ have ☐ have not waived the ten day period in which to file exceptions to the Report and Recommendations of the General Magistrate.

Dated: ________, 2026.

BY: ________________________________
Honorable Pamela Barger
Magistrate, Twentieth Judicial Circuit

cc: